SPRING, 1810.    *BLANC & AL.* vs. *THE MAYOR, &c. OF NEW-*
First District.                    *ORLEANS.*

Whether the
Corporation of
N. Orleans may
lay a toll on boats
at the Bayou
bridge ?

*By the Court*, MARTIN, *J. alone.* The complainants state, that they are owners of vessels navigating the Bayou St. John—that in pursuance of an ordinance of the City Council of New-Orleans, sanctioned by the Mayor, the officers of the corporation are preparing to collect a tax which will materially affect their respective interests, and suggesting that the City Council has exceeded its powers, pray the Court to declare the ordinance null and void, and in the mean while, to inhibit the Mayor and City Council, and their officers, agents or farmers, from collecting the tax until the matter in the bill shall be fully pronounced upon.

THE facts in the case are these:

BEFORE the year 1797, there had existed a dormant bridge across the Bayou St. John. At that time the Canal Carondelet being perfected, the Cabildo of the City of New-Orleans spent in building a draw-bridge, a sum of money, part of a larger one appropriated to another use. With a view to replace the money thus diverted, and to provide a fund to furnish to the repairs of the bridge, that body laid a tax of one dollar upon every schooner entering the Bayou.

IN the year 1808, the bridge being much damaged, the Legislature of the Territory authorised the Corporation of the City of New-Orleans to receive this dollar tax or toll, which was

extended to every embarkation except pirogues and fishermen's boats; making it the duty of the Corporation to rebuild the bridge, in the same manner and dimensions, and to keep it in repair. In the following year, so much of this act as related to the manner of building and the dimensions of the bridge, was repealed.

In pursuance of these two acts, the corporation built a new draw-bridge, and on their attempting to collect the dollar toll, an injunction was obtained by the Orleans Navigation Company, which has since been made perpetual. The court expressing an opinion that " the charge " was onerous and without public utility, and in " violation of the rights secured to the Naviga- " tion Company, which were considered as par- " amount to the subsequent law authorizing the " city to impose the toll upon vessels."

On the 21st of July last, the ordinance complained of was passed.

The Council in the preamble begin by referring to the act of the Legislature for building the bridge and the decree of the Superior Court inhibiting the collection of the toll. They next state their right of laying taxes, and set forth, " that there had existed formerly a dormant " bridge on the bayou, so that the portcullis was " constructed only for the advantage of naviga- " tion, and consequently it is most equitable to " subject to the payment of a retribution all boats " &c. for whose passage it is necessary to open

Q

" the portcullis, for which purpose a person is
" paid constantly to attend the same : whereas
" the salary of the person employed to attend
" the bridge, also the expenses of the repairs of
" the said bridge and portcullis are to be defray-
" ed by the corporation."

AFTER this preamble the Council proceed to
decree that " for every boat, barge, schooner or
" other vessel for whose passage it shall be ne-
" cessary to open the portcullis on the bayou St.
" John, shall be received a toll of two dollars."

On these facts the complainants contend that
the act of incorporation does not authorize the
laying of this toll.

2. THAT this ordinance violates the constitu-
tion of the United States, which forbids the im-
position of tonnage duty without the consent of
congress.

3. THAT it is contrary to the charter of the
Navigation Company.

4. THAT it is an infraction of the decree of the
Superior Court which prohibits the collection of
the dollar tax.

I. IN support of the first proposition, that the
act of incorporation does not authorize the laying
of this toll or tax, it is said, that it is in vain
sought to be justified by the 6th section of the act
of incorporation which the ordinance sets forth in
the preamble in these words—" The Mayor and
" City Council are authorized to levy taxes in
" the manner that they may deem expedient, on

" real and personal property *situated within the* " *limits of the city*," for the boats on which the toll is attempted to be levied are not property *situated within the limits of New-Orleans.* The situation which authorizes a toll, must be a *situation with some degree of permanence.* It is true the word *situated* is not to be found in the English part of the act of incorporation, but it is implied. The translator of the act understood it so : the City Council understood it so, in the French and English copies of their own ordinance which they have published. Nay, the territorial legislature understood it so, for otherwise it would have been in vain to have authorized the City Council to receive the dollar tax laid by the Cabildo. For the City Council required no sanction but that of their ordinance, if the word *situated* be not necessarily implied.

On this point I incline to admit the objection made by the complainants. For if it be not valid, the corporation may extend their power of taxation to negroes residing on distant plantations, or territories, occasionally coming to, or passing through the city, to the carriages, horses and baggage of travellers, to every pound of cotton coming down the river, to every ship and dollar's worth of goods entering it.

II. The second objection is that the ordinance violates the constitution of the United States, which prohibits the imposition of tonnage duty, unless with the consent of congress.

BLANC & AL.
*vs.*
MAYOR, &c.

THE imposition, it is contended by the defendants, is not a tonnage duty; because the amount of it is not ascertained by the number of tons—but the complainants reply, that a tonnage duty is a duty on *shipping*—in the same manner as a poll tax is a tax on *persons;* that as a corporation inhibited by its charter to lay a poll tax, would violate it, if it laid a tax on the human body or any of its members; so a prohibition to lay tonnage duty must imply a prohibition to lay a duty on the number of square inches or feet in the hull of a vessel, or the length of her keel, or on the vessel herself.

III. THE third objection is, that the ordinance is contrary to the charter of the Navigation Company.

IT is said that, as the legislature itself cannot violate this charter, it would be absurd to pretend that a corporation, which draws their existence from the legislature, may.

ON this point it seems to me that the act incorporating the Navigation Company being a private act, I cannot take in this suit any notice of it, and that the complainants, who derive no authority from that body, cannot invoke a charter which is private property.

IV. THE fourth objection is, that the ordinance is an infraction of the decree of the Superior Court which forbids the collection of the dollar toll.

THE decree here alluded to was made in a suit, the parties of which were the Navigation Company and the present defendants. The present complainants were not parties in it—As to them it is *res inter alios acta*. It could not impair, it cannot better, their rights.

BUT the City Council contend,

1. THAT they have the power of laying taxes independently of their act of incorporation, that power being incident to all corporations.

2. THAT the toll is not a tax or duty, but a fair retribution for services rendered.

3. THAT the application of the complainants is premature and improper.

I. THE first position does not appear to me supportable. It is true that corporations, the charters of which are silent as to the right of laying taxes, must have that right as incident to their incorporation ; it rises *ex necessitate rei*.—The government of a city cannot be supported without money, any more than that of an empire, and as money cannot be raised without taxes, the authority to govern must necessarily draw with itself that of raising taxes.

BUT as the power of raising money is very liable to abuse, it is seldom granted without limitation and restraint, and this may be done *positively* by the exclusion of certain articles from taxation, or *negatively* by a specification of the objects of taxation—A specification which necessarily confining the power of the corporation

Spring, 1810.
First District.

Blanc & al.
*vs.*
Mayor, &c.

to the detailed objects, must exclude it from all others.

This principle was recognised by Lord Macclesfield in the case of *Childs* vs. *the Hudson's Bay Company.* " A corporation has an implied " power to make by-laws, they can only make " them in such cases as they are enabled to do " by the charter : for such a power given by the " charter implies a negative that they shall not " make by-laws in any other case." 2 *P. W.* 209.

In the city charter, power is given to lay taxes on property situated *within* the city. Such a power given by the charter, implies a negative that they shall not lay taxes in any other case— on property *without.*

II. It is averred that the toll is not a tax nor a duty, but a fair retribution for services rendered.

It is not on the score of taxation alone that a corporation may direct or require the payment of money—if there be services which must necessarily be performed by their officers, or by persons whose capacities must necessarily be ascertained before they are allowed to render them, the corporation may by law fix the amount of their retribution—as a fee to their clerk for furnishing records—or a pilot. If, therefore, the genuine character of this imposition be once ascertained, the question will be solved.

The complainants urge that the real intention

of the corporation is not the remuneration of the hands employed in raising the portcullis, but to fill the city coffers. In the preamble, the ordinance brings to view the necessity of procuring money, and the failure of the extraordinary fund which the Legislature had provided beyond the ordinary legitimate means of raising supplies—manifesting, in the opinion of the counsel of the claimants, an intention indirectly to require the payment of the dollar toll, which the Superior Court has pronounced could not be demanded—transferring the place of exaction from the mouth of the bayou to the bridge, and as by this means the number of objects of taxation must be lessened, increasing the tax to four-fold. The complainants next draw my attention to the extravagance of the toll, considered on the score of a fair retribution—four dollars for passing and re-passing. Hence they conclude that money is to be raised beyond the fair expense of raising and repairing the portcullis—even the whole cost of the whole bridge and its repairs. If this be the case, the court will be obliged to consider the toll as an imposition laid to fill the city coffers, on objects not within its reach, disguised under a call for a fair retribution of services rendered.

THE corporation endeavor to assimilate their right to the toll to that of the Cabildo to the dollar tax, and consider their's as much stronger, as the money is demanded on the raising of the portcullis only—but the complainants reply, that in

SPRING, 1810.
First District.

BLANC & AL.
vs.
MAYOR, &c.

SPRING, 1810.
Firs<sup></sup> District.

BLANC & AL.
*vs.*
MAYOR, &c.

the deliberation of the Cabildo, the tax is justified on the ground that great expenses had been incurred for the benefit of navigation, in digging the Canal Carondelet, which saved to the crafts the expense of carting their cargoes to the city, by enabling them to land and take them on the margin of the basin, near the hospital. " *Siendo este,* (*el canal* not *el puente*) *a beneficio de los que navigan desde el bayou para Pensacola, Mobila & otros pareses, quienes ahorran quanto les coste los carruages, respecto que ahora llegan para cargar & descargar hasta las imediaciones del hospital de la carita.*" It is clear that in this deliberation, the portcullis of the bridge were considered as the toll gates of a turnpike road (the canal.) But now that the canal has become impassable, there is no similarity in the pretensions, nor could there be, since the power of deepening the canal is vested in another corporation.

III. LASTLY ; the defendants complain by their counsel, that the application for relief in the present mode is improper, or at least premature.

THE complainants might have waited till the toll was actually exacted, and then have brought their action for money had and received, to recover the toll, if it be illegal. To many, especially those who may not be resident of the neighborhood, this sort of remedy would have been worse than the disease. It would be more to their interest to submit to the imposition than to wait the tedious process of a suit which must

necessarily originate before a justice of the peace, with whose determination the party cast would not likely rest satisfied. If the injunction be granted, the question will much sooner be put at rest, and not only the present complainants, but a vast number of other persons will be relieved. The whole community has an interest in the solution of the point in dispute, and the mode of relief resorted to, appears to me the speediest, the easiest, and the cheapest. Therefore

<div style="text-align:center">

LET AN INJUNCTION ISSUE.