PROVO STY, J.
Section 11 of the charter of the city of Shreveport, as amended by Act 220, p. 498, of 1912, provides as follows:
“The council shall have full power to make and pass such * * * ordinances as may be necessary and proper.
“First. To regulate and preserve the peace and good order of the city, and to provide for and maintain cleanliness and sanitary conditions. * * *
“Fourth. To prohibit, prevent and suppress mock auctions, and every kind of fraudulent game, device or practice, and to punish all persons managing, using, practicing or attempting to manage, use or practice the same, and- all persons aiding or abetting in the management, use or practice thereof. To prohibit, regulate, restrain or prevent persons from gaming for money or property, whatever may be the amount thereof, with cards, billiards, dice, dominoes, tenpins alleys (whatever may be the number of pins used to the contrary notwithstanding), ta *939 bles, balls, alleys, wheels of fortune, boxes, machines, or other instruments or devices whatsoever or character of game whatsoever, in any building or place in the city, and to punish the person keeping' the building, instrument or means of such gaming, and to compel the destruction of all such instruments or means. To prevent, prohibit and suppress all lotteries or raffles for drawing or disposing of money or other property or things whatever, and to punish all persons maintaining, directing or managing the same or aiding in the maintenance, direction or management thereof. To regulate (or suppress) all circuses, show theaters, billiard tables, bowling alleys, concerts, itinerant sellers of medicine, corn doctors, pet bear exhibitions, for pay, fortune tellers, cane or knife racks and like device, gift enterprises, lung testers, feather renovators, muscle testers or developers, peddlers, flying jennies, pistol or shooting galleries, theatrical exhibitions, skating rinks, roller coasters, and other like things, dance houses and rooms, kenno rooms, opium dens, hop joints and clairvoyants. To prohibit and suppress desecration of the Sabbath day, and all kinds of indecency and other disorderly practice and disturbance of the peace. _ To create by ordinance such district or districts within which all bars, saloons and clubs or other places wherein intoxicating liquors are disposed of, may be confined; to regulate the police of theaters, public halls, taverns, places for shows and exhibitions, houses for public entertainments, shops for retailing liquors, houses for public prostitution, and to order the same to be closed whenever the public safety and tranquility may require it, and to impose such regulations and duties upon persons keeping such place as they may deem proper and necessary, and to punish all vagrants.”
The city adopted the following ordinance:
“An ordinance suppressing and closing all houses of prostitution or assignation, making it unlawful to keep, conduct, operate or maintain any house of prostitution or assignation within the corporate limits of the city of Shreveport; prohibiting the use of any hotel, house, apartment, room or place for the purpose of prostitution or assignation or other lewd or indecent act; providing a penalty for the violation of this ordinance and repealing all ordinances in conflict herewith.
“Whereas, the United States is engaged in war and an army is being raised in this city and parish; and,
“Whereas, it is necessary that the health and morals of the soldiers drawn from this city and vicinity be safeguarded and protected; and,
“Whereas, houses of prostitution and assignation are a menace to the welfare and injurious to the health and morals of the soldiers (or army), and the public generally, and the public safety and tranquility require that they be closed and suppressed; and,
“Whereas, all houses used for purposes of prostitution or assignation are public nuisances and should be abated:
“Now, therefore, by virtue of the authority vested in this body by law and in the exercise of the police power of this municipality;
“Section 1. Be it enacted by the city council of the city of Shreveport, in legal session assembled ; that all houses, rooms, apartments, or other places of any kind or character whatever within the corporate limits of the city of Shreveport, used for the purpose of prostitution or assignation or other lewd or indecent act, whether situated in a district heretofore established, or elsewhere, be and the same are hereby ordered closed and suppressed for such purposes, and the use of any such house, apartment, room, or place for the purpose of prostitution or assignation or other lewd or indecent act. is prohibited.
“Sec. 2. That it shall be unlawful for any person, firm or corporation, to keep, run, conduct or maintain any house, room, apartment or other place used for the purpose of prostitution or as a place of assignation or other lewd or indecent act, within the corporate limits of the city of Shreveport.
“See. 3. That it shall be unlawful for any person, association of persons, firm or corporation to rent or lease any house, apartment, room or other place, knowing that the same will be used for the purpose of prostitution or assignation, or lewd or other indecent act, or to otherwise knowingly authorize or permit the occupancy of any house, apartment or place for such unlawful purpose. ■
“Sec. 4. That it shall be unlawful for any person to use or occupy any hotel, house, room or other building or place for the purpose of prostitution, assignation or other lewd or indecent act, in the city of Shreveport.
“Sec. 5. That any person found guilty of violating any of the provisions of this ordinance shall be fined not more' than $100.00, or imprisonment for not more than ten days, or both fine and imprisonment may be imposed in the discretion of the court; ' provided that each day any house, room, apartment or other place is kept, run, conducted or maintained in violation of this ordinance shall constitute a separate offense and the offense shall be punished accordingly.
“Sec. 6. That all ordinances or parts thereof in conflict herewith, and especially an ordinance adopted February 16, 1903, entitled ‘An Ordinance — Lewd Women — Defining District,’ be and the same are hereby repealed.
“Sec. 7. If any clause, section, paragraph or part of this ordinance shall, for any reason be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair or invalidate the remainder thereof, but shall be confined in its operation to the clause, sentence, paragraph, or part thereof directly involved in the controversy in which such judgment shall have been rendered.”
*941 The present appeal embraces three cases against as many accused. The cases are said to be test cases, the violation of the ordinance not being disputed, but only its validity.
The affidavit against Bessie Price reads that she
“did unlawfully keep, run and conduct and maintain a house used for the purpose of prostitution and assignation”
and further that she
“did unlawfully rent and lease to another party a room in said house, knowing that the same would be used for the purpose of prostitution and assignation, and did unlawfully permit the occupancy of said room for such purpose.”
The affidavit against Dollie Maxwell reads that she
“did unlawfully use and occupy a room at No. 210 Cain street for the purpose of prostitution and assignation.”
The affidavit against S. L. Ferguson is that he
“did unlawfully use and occupy a room at No. 210 Cain street, for the purpose of prostitution and assignation and for a lewd and indecent act, to wit, to having sexual intercourse with a prostitute.”
In a motion to quash, the accused contested the authority of the city to suppress, or close, houses of prostitution, contending that the city had authority only to regulate the police of such houses; and they asked the judge that, in deciding the cases, he charge himself, or, in other words, hold, that it is beyond the power of the city to make adultery, fornication, or prostitution a crime; and also that the clause in the charter, authorizing the closing of houses of prostitution “whenever the public safety and tranquility may require it,” means to close said houses during some emergency such as an epedemie or strike and not permanently, and that no emergency called for the adoption of said ordinance.
The judge overruled said motion, and refused to give said charges, holding that the city had charter authority to adopt said ordinance, and that no evidence had been adduced on the point of whether an emergency existed or not, and that he took judicial cognizance of the country being at war.
[1] In arguing against the city’s authority, the learned counsel for the accused bases himself mainly upon the peculiar wording of the city charter, invoking the maxim, “Expressio unius est exclusio alterius.” Dillon, Mun. Corp. § 586; State v. Ferguson, 33 N. H. 424; Blanc v. Mayor, 1 Mart. (O. S.) 120; City of N. O. v. Philippi, 9 La. Ann. 44. And there can be no denying that the wording of the charter is peculiar, and that this peculiarity affords strong ground for the application of that maxim. In the clause relating to houses of prostitution, the word “regulate” is used, whereas in the five other clauses of the same paragraph the words used are “prohibit,” “prevent,” “suppress,” words between which and “regulate” the difference in meaning is marked and well established in law. 34 Cyc. 1030, note. Indeed in one clause, where the word “regulate” is used, there is added “or suppress,” as if that addition had been deemed to be necessary for conferring the power to suppress. Furthermore, said houses are named along with theaters, taverns, houses of public entertainment, as if to put them on the same plane with these other places, and to confer with regard to them only the same measure of power as with regard to these others. Nor is that all; in the other paragraphs of the same section, in connection with more than a hundred subjects, whenever the police power is delegated in connection with something which it may become necessary to suppress, the word “suppress,” or its equivalent in the ordinary meaning of language, is used; whereas the word “regulate” is used when *943 the thing in connection with which the police power is delegated is one which it cannot ever become necessary to suppress. And in other municipal charters the said words are used with the same apparently careful discrimination, notably in the charter of the city of New Orleans adopted at the same session of the Legislature, and in the general act for the organization of municipal corporations, also adopted at the same session.
But, however strong may be the implication arising from this peculiarity in wording, we cannot adopt it as furnishing a correct interpretation. In this country prostitution has been looked upon at all times and everywhere as a great evil which it was the duty of every well-ordered community to try to get rid of by every means in its power. One obvious and well-recognized means has been to prevent it from setting up regular establishments where its shameless agents and ministers may carry on its business and lure its victims. This obvious means of combating this evil it is not to be supposed any Legislature would deliberately withhold from any municipality it was chartering. Again, such establishments are in law nuisances per se, which a municipality, may under the general welfare clause of its charter, suppress. 14 Cyc. 484 ; 28 Cyc. 712; 29 Cyc. 1166; 39 L. R. A. 521, note; Shreveport v. Nejin, 140 La. 787, 73 South. 996; Id., 140 La. 510, 73 South. 313; 28 Cyc. 705. The Legislature is not to be supposed to have by a special clause, withheld from a municipality it wa^i chartering the power to suppress a nuisance which the municipality would, in the absence of anything said specially on the subject in its charter, have the power to suppress under the general welfare clause; and especially would the Legislature not do this in connection with a nuisance affecting so directly 'the good order and well-being of a community as does this one of public prostitution. Finally, a consideration to our mind conclusive is that the business of prostitution ought not to have, and never has had, any legal standing whatsoever — has always been a thing outside the pale of the law — to be hunted down, and that the Legislature cannot be supposed for a single instant to have intended by said clause to change this order of things, to throw the mantle of its protection around this evil, to endow this business with the legal right to exist in the city of Shreveport which would be the effect of denying to the city the right to suppress it. City of New Orleans v. Collins, 52 La. Ann. 973, 27 South. 532.
[2] To convince the reasonable and unbiased mind of an intention on the part of the Legislature to legislate thus counter to every principle, an express declaration, or something equivalent to it, would be required. An implication arising from mere peculiarity of wording — as likely as not purely accidental — will not suffice. The principle embodied in the maxim expressio unius “expresses a rule of construction, not of substantive law, and serves only as an aid in discovering the legislative intent when that is not otherwise manifest.” U. S. v. Barnes, 222 U. S. 513, 32 Sup. Ct. 117, 56 L. Ed. 292. And while the word “regulate” would not ordinarily convey the meaning of prohibit, prevent, or suppress, but, on the contrary, would imply the continued existence of the thing to be regulated, there is no absolute reason why, when used for delegating the police power in connection with a thing the best, or the only efficacious, regulation of which would involve suppression, it should not have that meaning. Undeniably the measure of police power delegated by its use varies according to the nature of the subject to be regulated, as affecting in less *945 or greater degree the public safety, health, or morals. The more completely the subject would come under the jurisdiction of the police power, the greater would be the measure of power delegated. The measure of police power for the regulation of brothels is certainly incomparably greater than that for the regulation of theaters, or restaurants. From the pen of so accomplished a jurist and scholar as Justice Brewer, we have the following:
“Obviously, the regulation of houses of ill fame, legislation in respect to women of loose character, may involve one of three possibilities: First, absolute prohibition; second,” etc. L’Hote v. New Orleans, 177 U. S. 587, 20 Sup. Ct. 788, 44 L. Ed. 899.
Thus Justice Brewer, speaking for the Supreme Court of the United States, understood that the regulation of houses of prostitution might involve their prohibition or suppression. We cannot suppose that this special clause on the subject of prohibition was added for the purpose of withholding from the city of Shreveport a power which it would otherwise have had. The intention, on the contrary, to confer additional powers is quite obvious. We have to conclude, therefore, that the city has the power to suppress houses of prostitution.
[3] We think, however, that the learned trial judge erred in refusing to charge himself that it was beyond the power of the city to make fornication or adultery, of themselves — that is to say, disconnected with any circumstance of scandal or public disorder, and as distinguished from the practice or business of prostitution — a crime.
[4, 5] The general rule is that legislative power cannot be delegated. An exception to that rule is recognized in the case of municipal corporations, to which the legislative power may be delegated in whatever measure may be justified by the exigencies of local government; by necessity, or greater convenience in the administration of public affairs. “Powers that are not essentially municipal in character may not be delegated to the municipal authorities.” 12 C. J. 861. “Authority to define offenses against the state and to designate what acts shall be punishable as such cannot be delegated.” 12 C. J. 589. “Whenever the municipality shall attempt to exercise powers not within the province of local self-government, whether the right to do so is claimed under express legislative grant, or by implication from the charter, the act must be considered as altogether ultra vires, and therefore void.” Cooley, Const. Lim. 211. Adultery or fornication, committed secretly in the privacy of a room, offend against morality; but, as they do not appear to the public eye, they disturb in no way the outward, or public, good order of the municipality, and therefore do not call for the exercise of municipal authority. Whether the Legislature could constitutionally delegate to a municipality jurisdiction over a matter simply of public morals such as this, we need not here consider, as we do not find that by the said charter provisions it has undertaken to do so. Isolated acts of adultery or fornication in the privacy of a chamber do not constitute public prostitution, and it is only over public prostitution that the city is given authority, or can claim it under the general welfare clause. Nor do such acts come under the clause authorizing the prohibition and suppression of “all kinds of indecency and other disorderly practices and disturbance of the peace.” The indecency here referred to is not that which occurs in the privacy of a chamber, away from public observation, but, as indicated by the context “and other disorderly practices” ; it is such indecency as appears to the public, and, as such, amounts to disorder.
[6] The ordinance unqualifiedly makes it *947 an offense to use a room for the purpose of a lewd or other indecent act; so that a lewd or other indecent act is made an offense though committed secretly in the privacy of a room. And one of the charges against the accused Ferguson is that he used and “occupied a room for the purpose of a lewd and indecent act, to wit, to having sexual intercourse with a prostitute.” For all that appears, the act was not committed in the room of the prostitute, but may have been committed in some room where never before such an act had been committed. Whether its having been committed in the room of the prostitute would make a difference is a question which need not be considered.
It may be that the conviction of the accused Ferguson was on the other charge of having used and occupied a room for the purpose of prostitution, but it may be also that his conviction was on the fornication charge; and, indeed, the latter-is made probable from the fact that the trial judge refused to charge himself as requested, and from the further fact that the cases are said to have been brought up as test cases, and the Ferguson case is the only one involving the point now in question. The refusal to give the charge may therefore have been prejudicial to the accused Ferguson, and, as it was error, it necessitates the setting aside of the judgment as to him.
The judgment appealed from is set aside as to the accused Ferguson, and the case as to him is remanded for further trial; and the said judgment is affirmed as to the two other accused.
O’NIELL, J., concurs in the decree in the cases of Bessie Price and Dollie Maxwell on the ground that the municipal charter contains direct authority for closing houses of prostitution, viz. “and to order the same to be closed whenever the public safety and tranquility may require it.”