857 So.2d 423 (2003)
STATE of Louisiana
v.
Corey MILLER, Emanuel Stevenson, and Latasha Witherspoon.
No. 2003-KK-0206.
Supreme Court of Louisiana.
October 21, 2003.
*425 Ronald J. Rakosky, Martin E. Regan, Jr., for Applicant.
Richard P. Ieyoub, Attorney General, Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Asst. District Attorney, Juliet L. Clark, Douglas W. Freese, William D. Daume, Christopher B. Edwards, Don C. Gardner, for Respondent.
KNOLL, Justice.[*]
This criminal case addresses the constitutionality of the last sentence of La. R.S. 14:402(E), a catchall provision which attempts to expand the definition of contraband in a parish prison. Defendants were jointly indicted under La. R.S. 14:402(E), pertaining to the introduction and possession of contraband in a correctional center, specifically a cellular phone and charger. After their indictment, the defendants filed a motions to quash, arguing that the catchall provision contained in the last sentence of La. R.S. 14:402(E) was unconstitutional as an improper delegation of legislative power and void as vague. The district court denied defendants' motions, and the court of appeal affirmed. We granted this writ to consider the constitutionality of the last sentence of La. R.S. 14:402(E), which provides that the definition of contraband is not restricted to those articles specifically set forth in the statute. For the following reasons we reverse, finding the lower courts erred in denying defendants' motion to quash, concluding that the statutory catchall provision of La. R.S. 14:402(E) violates the separation of powers doctrine. State v. Corey Miller, 03-KK-0206 (La.4/25/03), 842 So.2d 387.

FACTS AND PROCEDURAL HISTORY
On March 13, 2002, around 5:30 p.m., officers of the Jefferson Parish Sheriff's Office on duty at the Jefferson Parish Correctional Center ("JPCC") conducted a lockdown search of POD 3B LEFT, an area within the JPCC. During the search, the officers discovered a silver colored cellular phone plugged into a charger, which had been concealed behind a television set located in the common area of the POD.
After obtaining a search warrant for the information stored in the phone and a subpoena duces tecum for the cellular phone company's records, the investigating officers determined that the phone contained numbers directly linked to defendant, Corey Miller. At the time the phone was discovered, Miller was housed in the POD on charges of second-degree murder. Officers also learned that the phone was registered to the same address as listed on Miller's Louisiana identification card. It was further discovered that Sheriff's Deputies Latasha Witherspoon and Emanuel *426 Stevenson were instrumental in placing the cellular phone in Miller's possession.
On July 11, 2002, a grand jury indicted the defendants, Miller, Witherspoon, and Stevenson on multiple counts. The first count charged Miller, Stevenson, and Witherspoon with conspiracy to introduce contraband into the JPCC on or between January 18, 2002 and April 19, 2002 in violation of La. R.S. 14:402. The second count charged the defendants with conspiracy to commit public bribery on or between January 18, 2002 and April 19, 2002 in violation of La. R.S. 14:118. In the third count, the defendants were charged with the possession or introduction of contraband, namely, a cellular telephone and charger, into the JPCC in violation of La. R.S. 14:402.[1] Stevenson and Witherspoon, who were correctional officers in the JPCC at the time of the offense, were further charged in the fourth and fifth counts with public bribery in violation of La. R.S. 14:118 and malfeasance in office in violation of La. R.S. 14:134, respectively.
La. R.S. 14:402(E) is directly charged in the first and third counts of the indictment and implicated in the second, fourth, and fifth counts. The statute at issue provides:
E. It shall be unlawful to possess or to introduce or attempt to introduce into or upon the premises of any municipal or parish prison or jail or to take or attempt to take or send therefrom, or to give or to attempt to give to an inmate of any municipal or parish prison or jail, any of the following articles which are hereby declared to be contraband for the purpose of this Section, to wit:
(1) Any currency or coin which is legal tender;
(2) Any stolen property;
(3) Any article of food or clothing;
(4) Any intoxicating beverage or beverages which cause or may cause any intoxicating effects;
(5) Any narcotic or hypnotic or excitive drug or any drugs of whatever kind or nature, including nasal inhalators of any variety, sleeping pills or barbiturates of any variety that create or may create a hypnotic effect if taken internally, or any other controlled dangerous substance as defined in R.S. 40:961, et seq.; and
(6) Any firearm or any instrumentality customarily used as a dangerous weapon, including explosives or combustibles, except through regular channels as authorized by the officer in charge of any institution herein, or any plans for the making or manufacturing of such weapons or devices;

However, the definition of contraband is not restricted to those articles set forth hereinabove. (Emphasis added).
All of the defendants pleaded not guilty. Stevenson and Witherspoon filed motions to quash the indictment based on the constitutionality of the last sentence of La. R.S. 14:402(E), alleging that the provision is an improper delegation of legislative power and authority and is void for vagueness. Miller joined in the motions to quash.

LAW AND ANALYSIS
Under Article II, § 1 of the Louisiana State Constitution, the powers of state government are divided into "three separate branches: legislative, executive, and *427 judicial." LA. CONST. art. II, § 1. Article II, § 2 enunciates the separation of powers doctrine: "Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others." LA. CONST. art II, § 2. "Unlike the federal constitution, a state constitution's provisions are not grants of power but instead are limitations on the otherwise plenary power of the people of a state exercised through its legislature." Meredith v. Ieyoub, 96-1110 (La.9/9/97), 700 So.2d 478, 481, citing Board of Commissioners of Orleans Levee District v. Department of Natural Resources, 496 So.2d 281, 286 (La.1986). From these constitutional provisions, we derive the principle "that legislative power, conferred under constitutional provisions, cannot be delegated by the Legislature either to the people or to any other body of authority." City of Alexandria v. Alexandria Firefighters Association, 220 La. 754, 57 So.2d 673 (1952).
The constitution vests the legislative authority exclusively in the Legislature. LA. CONST. art. III, § 1(A). "It is well settled in Louisiana jurisprudence that the determination and definition of acts which are punishable as crimes are purely legislative functions." State v. All Pro Paint & Body Shop, Inc., 93-1316 (La.7/5/94), 639 So.2d 707, 711; State v. Taylor, 479 So.2d 339, 341 (La.1985); State v. Rodriguez, 379 So.2d 1084, 1085 (La. 1980). Logically it follows that the Legislature cannot delegate its power to create and define criminal offenses. All Pro Paint, 639 So.2d at 711; Taylor, 479 So.2d at 341; State v. Broom, 439 So.2d 357, 367 (La.1983); Rodriguez, 379 So.2d at 1085; State v. Maitrejean, 193 La. 824, 192 So. 361, 364 (1939); City of Shreveport v. Price, 142 La. 936, 77 So. 883, 886 (1918).
However, the courts have repeatedly recognized, in the interest of legislative efficiency, exceptions to the nondelegation doctrine and allow the Legislature to delegate to administrative boards and agencies of the state the power to ascertain and determine the facts upon which the laws are applied and enforced. All Pro Paint, 639 So.2d at 711; Taylor, 479 So.2d at 341; Broom, 439 So.2d at 367; Rodriguez, 379 So.2d 1085; State v. Morgan, 238 La. 829, 116 So.2d 682, 687 (1959); Schwegmann Brothers Giant Super Markets v. McCrory, Commissioner of Agriculture, 237 La. 768, 112 So.2d 606, 613 (1959); State v. Guidry, 142 La. 422, 76 So. 843 (1917); State v. Syas, 136 La. 628, 67 So. 522 (1915). Provided the Legislature statutorily establishes standards for the guidance of the executive or administrative body or officer so that the executive is not vested with arbitrary discretion, a delegation of legislative authority to the executive branch is constitutional and not in violation of the separation of powers doctrine. Rodriguez, 379 So.2d at 1085; All Pro Paint, 639 So.2d at 711; Taylor, 479 So.2d at 341; Broom, 439 So.2d at 367.
Under the separation of powers doctrine, unless the constitution expressly grants an enumerated legislative power to the executive or the Legislature has enacted a statute expressly authorizing another branch to exercise its power, the executive does not have the power to perform a legislative function. Meredith, 700 So.2d at 481; Ieyoub ex rel. State v. W.R. Grace & Co.Conn., 97-728 (La.App. 3 Cir. 3/6/98), 708 So.2d 1227, 1230. If the constitution has assigned a particular authority to the legislature, the constitutional grant of power is exclusive. See Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 631-32, 72 S.Ct. 863, 96 L.Ed. 1153 (1952) (Douglas, J., concurring); LAURENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW, *428 § 4-8 (2nd ed., 1988). If the legislature has not spoken to grant to the executive the power to take acts enumerated as within the legislative power by the constitution, then the silence must be understood as denying the executive such authority. TRIBE, supra at § 4-8. Article II, § 2 of the Louisiana Constitution of 1921 provided that "no one [branch], nor any person or collection of persons holding office in one of them, shall exercise power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted." In the revision of the constitution in 1974, the constitutional convention substituted the phrase "except as otherwise provided in this constitution" for the phrase "hereinafter expressly directed or permitted." Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts Vol. IX, p. 3072. The revised provision, however, was intended to retain the substantive effect of the previous provision, which mandated an express delegation of authority to another branch of government.[2]Id. Therefore, for the executive to have the power to perform legislative functions, there must first be an express delegation either in the constitution itself or by the Legislature in a statute.
In the case at hand, the State alleges that the Legislature implicitly delegated the authority to define what constitutes contraband to the governing body of the parish jail.[3] The State argued in the trial court that the provision of La. R.S. 14:402(E) in question does not limit the definition of contraband to those articles specifically set forth in the statute, but rather expands the definition to include "anything that an inmate is prohibited to have by those who are incarcerating him."
The sheriff is the keeper of the public jail of his parish. LA.REV.STAT. § 33:1435 (2003). As such, the sheriff, as warden, is the governing body of the parish jail. La. R.S. 33:9001 provides that the "criminal sheriff or his successor shall be ex officio the chief executive officer of the district." LA.REV.STAT. § 33:9001 (2003). Thus, the sheriff is obviously a member of the executive branch. For the sheriff, as an executive, to have the power to perform a legislative *429 function, the constitution or the Legislature had to expressly grant or delegate that authority to the sheriff. See Meredith, 700 So.2d at 481; Ieyoub, 708 So.2d at 1230. The last sentence of La. R.S. 14:402(E), which states "[h]owever, the definition of contraband is not restricted to those articles set forth hereinabove," is devoid of any express grant or delegation to the sheriff of the parish to further define what constitutes contraband under this statute.
This court has addressed the issue of the delegation of legislative authority in a criminal context on numerous occasions, and in the cases in which this issue has arisen, the statute in question contained an enabling cause directed to the executive branch granting to that branch the authority to perform some legislative function. See Morgan, 116 So.2d at 687-88 (addressing the constitutionality of former La. R.S. 14:402(A), which provided, in pertinent part: "it shall be unlawful to introduce ... certain articles declared to be contraband `except through regular channels to be authorized by the officer in charge of each correctional or penal institution'" (emphasis added)); Taylor, 479 So.2d at 340 (determining the constitutionality of former La. R.S. 14:402(A), which stated, in part, that "contraband shall be defined as any article ... which is not issued by the authorities operating the facility, sold through the institutional canteen, specifically permitted by applicable regulations, or otherwise specially authorized by the head of the facility or his designee "(emphasis added)); Broom, 439 So.2d at 358 (addressing the constitutionality of a statute which provided a penalty for violating regulations adopted by the Secretary of Public Safety); All Pro Paint, 639 So.2d at 708 (determining the constitutionality of statute which expressly provided the Department of Environmental Quality with the authority to identify and designate substances constituting hazardous waste subject to criminal penalty provisions). In all previous cases before this court, the statute in question specifically identified an officer or agency of the executive to which the legislature delegated its legislative authority. The last sentence of La. R.S. 14:402(E), however, fails to even identify to whom the legislative authority is granted.
In City of New Orleans v. Stein, 137 La. 652, 69 So. 43 (1915), this court held that the power to enforce an ordinance by a municipality, agency, or board by imprisonment must be expressly given, or else it does not exist. Stein, 69 So. at 43. Also, not only must the authority be expressly given, but it must be given plainly.[4]Stein, 69 So. at 43. Analogously, the authority to define items that constitute contraband, the possession of which is a crime punishable by up to five years in prison under La. R.S. 14:402(G), must be expressly and plainly given to the governing body of a municipal or parish jail. In a criminal context, the delegation of legislative authority to the executive branch and especially to a parish official must be expressly and plainly given. The catchall provision of La. R.S. 14:402(E) contains neither an express nor a plain delegation of legislative authority to the warden of the parish jail to determine what constitutes contraband.
Given this absence of an enabling clause or any express grant of authority and the well-established tenet of statutory construction that criminal statutes are subject to strict construction under the rule of lenity, State v. Carr, 99-2209 (La.5/26/00), 761 So.2d 1271, 1274, we find that the *430 catchall provision of La. R.S. 14:402(E) does not contain a delegation of legislative authority to the sheriff to determine the definition of contraband under this statute. Therefore, the actions taken by the sheriff in classifying the cellular phone and charger as contraband under La. R.S. 14:402(E) constitutes an unconstitutional usurpation of legislative authority and a violation of the separation of powers doctrine.
We further observe that had we determined the provision in question contains a proper delegation of authority to the executive, we would still find the provision unconstitutional under the separation of powers doctrine as an improper delegation of legislative authority.
This court in determining whether a particular delegation of legislative power is constitutional relies upon the three-prong test fashioned by this court under the guidance of the principles set forth in Schwegmann and inherent in the constitutional separation of powers: a delegation of authority to an administrative agency is constitutionally valid if the enabling statute (1) contains a clear expression of legislative policy, (2) prescribes sufficient standards to guide the agency in the execution of that policy, and (3) is accompanied by adequate procedural safeguards to protect against abuse of discretion by the agency. All Pro Paint, 639 So.2d at 712; State v. Barthelemy, 545 So.2d 531, 534 (La.1989); Adams v. State, Dept. of Health and Human Res., 458 So.2d 1295, 1298 (La.1984); State v. Union Tank Car Co., 439 So.2d 377, 380 (La.1983).
In State v. Taylor, 479 So.2d 339, 342 (La.1985), defendant challenged the constitutionality of former La. R.S. 14:402(A), which granted, at the time, the authority to the head of the correctional facility or his designee to define contraband by simply not issuing, selling, or permitting the article, substance, or thing in the facility.[5] Defendant Taylor was charged by bill of information with possession and introduction of contraband into or upon the grounds of Louisiana Training Institute, a facility of the Department of Corrections, located at Monroe, Louisiana in violation of La. R.S. 14:402(A). The alleged contraband was a large quantity of cigarettes. Defendant filed a motion to quash that portion of the bill charging him with the violation of La. R.S. 14:402(A) on grounds that the statute improperly delegated legislative authority to define a crime to the head of a correctional facility or his designee. This court held the statute unconstitutional, finding that the Legislature had improperly delegated the authority to define criminal acts. Taylor, 479 So.2d at 342.
*431 In Taylor, this Court found that the first sentence of former La. R.S. 14:402(A) defined any article, substance or thing as contraband "unless the authorities at the institution decide[d] to issue the article, sell it through the canteen, permit it by regulation or specially authorize it." We found the statute as written vested the prison authorities with "unbridled discretion to make exceptions to the Legislature's proscription of all items as contraband whenever they desire[d] to issue the article, sell it in the canteen or otherwise regulate or authorize it." Such unbridled discretion, in effect, vested the prison authority with the power to define and redefine what is criminal conduct by merely deciding one day to sell cigarettes at the canteen and then the next to discontinue such sales. The Court found that the statute as written failed "to prescribe sufficient standards by which the power delegated is to be exercised." We concluded that due to the unfettered discretion provided the executive by the statute, the exercise of the delegated authority constituted a legislative function, not an administrative function, and declared the first sentence of former La. R.S. 14:402(A) unconstitutional. Taylor, 479 So.2d at 342-43.
Similar to the first sentence of former La. R.S. 14:402(A), the last sentence of La. R.S. 14:402(E), as presently written, vests the governing authority of the parish jail with the unfettered authority to determine what is or is not contraband. Notably, this catchall provision would grant to the sheriff the authority to define criminal conduct, which under the provisions of La. R.S. 14:402(G) would constitute a felony under this state's substantive criminal law. La. R.S. 14:402(G) provides that a violation of any provision of La. R.S. 14:402 by anyone shall result in imprisonment "with or without hard labor for not more than five years." LA.REV. STAT. § 14:402(G) (2003). Article VI, § 9(A)(1) of the Louisiana Constitution provides that "no local government subdivision shall define and provide for the punishment of a felony." LA. CONST. art. VI, § 9(A)(1). Notwithstanding this constitutional directive, the catchall provision contained in La. R.S. 14:402(E) as written grants to local officials the authority to define criminal conduct, which under Section 402(G) constitutes a felony offense. Thus, this catchall provision would delegate to the sheriff, an executive member of local government, the authority to perform a legislative function. Moreover, the provision provides absolutely no standards by which the power delegated is to be exercised and renders the delegation completely unfettered. We find that a grant of such authority is clearly invalid under our constitution and the separation of powers doctrine. Accordingly, we will strike the last sentence of La. R.S. 14:402(E).[6]
Invalidation of the last sentence of La. R.S. 14:402(E), however, would not render the entire statute invalid. Under the doctrine of severability, the provisions of each legislative act are severable, even in the absence of a severability clause, La. R.S. 24:175(A), unless "the unconstitutional portions of the statute are so interrelated and connected with constitutional parts that they cannot be separated without destroying the intention manifested by the legislature in passing the act." State v. Azar, 539 So.2d 1222, 1226 (La.1989), cert. denied, 493 U.S. 823, 110 S.Ct. 82, 107 *432 L.Ed.2d 48 (1989); Cobb v. Louisiana Board of Institutions, 237 La. 315, 111 So.2d 126 (1958). In the present case, the last sentence of La. R.S. 14:402(E) clearly adds little, if anything, to the statute. The remainder of the statute specifically lists all items defined by the Legislature as contraband. Removal of the catchall provision would not affect the legislative intent behind the statute. The remainder of this statute, held constitutionally valid in State v. Morgan and State v. Taylor, would still stand.

DECREE
For the foregoing reasons, the last sentence of La. R.S. 14:402(E) is stricken and declared unconstitutional. The judgments of the lower courts are reversed and set aside, and judgment is hereby rendered granting defendants' motions to quash.
REVERSED.
KIMBALL, LOBRANO and VICTORY, JJ., concur in the result.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Justice ad hoc, sitting in place of Chief Justice Pascal F. Calogero, recused.
[1] On or about March 13, 2002, Miller was charged with the same alleged offense based on the same alleged conduct, the introduction and possession of contraband, a cellular phone and charger, in a correctional facility. The Jefferson Parish Correctional Center Disciplinary Board tried the defendant and found him guilty. He was placed in isolation for fourteen days and was deprived of all privileges as punishment for his offense.
[2] The explanation of this revision stated:

This is simply what we all know and understand to be the doctrine of separation of powers. The only difference between this statement and the statement of the 1921 Constitution is simply that it says "except in instances hereinafter expressly directed or permitted." At the end of our proposal we have "except as otherwise provided in this constitution." You may say, "Well, when in this constitution do we have other branches of government participating or encroaching upon others?" One example might be impeachment, another example may be where administrative bodies act as a court before those issues are submitted to a court, etc.
Records, supra at 3072.
[3] The State in its Brief relies on language contained in a footnote of a case decided by the First Circuit Court of Appeal, which provides:

Defendant does not argue that the statute is unconstitutional because it specifically provides that the list of contraband articles is not exclusive and thus, implicitly delegates authority to declare an item contraband. However, such a provision does not render the statute invalid. It is apparent that this provision is simply a recognition of the fact that the officer in charge of a penal institution is likely to face situations wherein it is impracticable to lay down a comprehensive rule, and the enforcement of a police regulation may require the prompt exercise of judgment.
State v. Converse, 529 So.2d 459, 462 (La.App. 1st Cir.1988)(affirming trial court's denial of defendant's motion to quash, finding that the provision under which the defendant was charged was upheld as constitutional under State v. Morgan), writ denied, 533 So.2d 355 (La.1988).
[4] The authority to impose a pecuniary penalty for violation of an ordinance may be implied because the ordinance would otherwise be nugatory. Stein, 69 So. at 43.
[5] La. R.S. 14:402(A), at the time, provided:

For the purpose of inmate and institutional security at state adult or juvenile correctional institutions, contraband shall be defined as any article, substance, or thing which is not issued by the authorities operating the facility, sold through the institutional canteen, specifically permitted by applicable regulations, or otherwise specially authorized by the head of the facility or his designee. Contraband includes but is not limited to any substance or device defined in the Uniform Controlled Dangerous Substance Law except where prescribed by a physician, provided the drugs are contained in a container from the drug store bearing the full identification of the doctor who issued the drugs, the druggist who dispensed same and the number of the prescription, and that said drugs are not concealed upon the body of the person; any weapons or devices designed to kill or wound or any plans for the making or manufacturing of such weapons or devices; explosives or combustibles; any plans for escape from an institution; intoxicating beverages; stolen property, and money which is legal tender, except where specifically authorized by applicable regulations.
[6] We hasten to add that while the governing authority of JPCC can control what items are not permissible for its prisoners to have and internally punish prisoners for violating its rules as was done in this case, it cannot criminalize such conduct without proper legislative delegation of authority.