147 So. 8

**STATE v. WATKINS.**

No. 32216.

Feb. 27, 1933.

Chris Barnette, of Shreveport, for relator.

Dimick & Hamilton, of Shreveport, for Cecil and Wylie Malone.

George G. Dimick, of Shreveport, amicus curiæ.

Gaston L. Porterie, Atty. Gen., James O'Connor, Asst. Atty. Gen., and James U. Galloway, Dist. Atty., and Nash Johnson, Asst. Dist. Atty., both of Shreveport (James O'Niell, Sp. Asst. to Atty. Gen., of counsel), for the State.

O'NIELL, Chief Justice.

The only question in this case is whether Act No. 238 of 1932 is unconstitutional. It purports to repeal the prohibition law, Act No. 39 of 1921 (Ex. Sess.), known as the Hood Act. Herbert Watkins was convicted of violating the Hood Act, and filed a motion in arrest of judgment, pleading that the law was repealed by Act No. 238 of 1932. The district attorney then pleaded that the act of 1932 was unconstitutional. The judge sustained the plea, overruled the motion in arrest of judgment, and sentenced Watkins to pay a fine of $100 and to be imprisoned in the parish jail for 30 days. The case is before us on writs of certiorari, prohibition, and mandamus.

Act No. 238 of 1932 merely provided for a referendum, submitting to the electors, in the congressional election held on the 8th of November, 1932, the question whether the prohibition law, known as the Hood Act, being Act No. 39 of 1921 (Ex. Sess.) as amended by Act No. 57 of 1924, should be repealed. The act of 1932 provided that there should be printed on the official ballot to be used in the election the words, "for the repeal of Act No. 39 of 1921, as amended, commonly known as the Hood Act," and the words, "against the repeal of Act No. 39 of 1921, as amended, commonly known as the Hood Act" (section 2), and that each elector should indicate his vote for or against the repeal of the Hood Act, in the manner and form provided for by the general election laws.

And the statute provided that, if a majority of the electors voting thereon should vote in favor of the repeal of the Hood Act, the secretary of state should promulgate the result of the election, according to law, and, at noon on the 30th day after the election, the Hood Act should, "by virtue of this Act, duly approved by said election, be repealed." Section 3. The result of the election, as promulgated by the secretary of state, was that a majority of the electors voting on the proposition had voted for the repeal of the Hood Act. The act, therefore, stands repealed if the Legislature, instead of repealing the act outright, could lawfully delegate to the electors the authority to repeal it.

Section 1 of article 3 of the Constitution 1921 vests the legislative power of the state in the Legislature, composed of the Senate and the House of Representatives. There is no suggestion in the Constitution, or reason to infer, that the Legislature may delegate its legislative power to the electors themselves, except the provision in article 21 that the Legislature shall submit to the electors for their approval or rejection all resolutions proposing amendments to the Constitution itself, and may, at the same session, enact laws to carry the proposed amendments into effect, and to have effect only if and when the proposed amendments are ratified.

▇▇ The writers on the subject of constitutional limitations agree, and show by their compilations of judicial decisions, that it is settled that the legislative power conferred upon the Legislature, under constitutional provisions like those of the Constitution of Louisiana, cannot be by the Legislature delegated to the electors, or to any other body

or authority. Cooley's Constitutional Limitations (8th Ed.) vol. 1, pp. 224, 238, 239, 240, 242, 244; 12 C. J. § 323, pp. 839 and 840; § 324, pp. 841 and 842; R. C. L. § 165, p. 164; § 166, p. 165; § 167, pp. 166, 167, 168.

In Cooley's Work on Constitutional Limitations (8th Ed.) vol. 1, p. 224, it is said:

"One of the settled maxims in constitutional law is that the power conferred upon the legislature to make laws cannot be delegated by that department to any other body or authority. Where the sovereign power of the state has located the authority, there it must remain; and by the constitutional agency alone the laws must be made until the constitution itself is changed. The power to whose judgment, wisdom and patriotism this high prerogative has been intrusted cannot relieve itself of the responsibility by choosing other agencies upon which the power shall be devolved, nor can it substitute the judgment, wisdom and patriotism of any other body for those to which alone the people have seen fit to confide this sovereign trust."

That principle does not forbid the Legislature to enact local laws dependent for their effect upon a vote of the electors of the locality to be affected, or to enact a general law or municipal charter to govern only such municipalities as may see fit to adopt it by a majority vote of the electors in the municipality. On that subject it is said on page 238 of the work which we have referred to:

"The question then arises, whether that which may be done in reference to any municipal organization within the State may not also be done in reference to the State at large. May not any law framed for the State at

large be made conditional upon an acceptance by the people at large, declared through the ballot box? If it is not unconstitutional to delegate to a single locality the power to decide whether it will be governed by a particular charter, must it not quite as clearly be within the power of the legislature to refer to the people at large, from whom all power is derived, the decision upon any proposed statute affecting the whole State? And, can that be called a delegation of power which consists only in the agent or trustee referring back to the principal the final decision in a case where the principal is the party concerned, and where perhaps there are questions of policy and propriety involved which no authority can decide so satisfactorily and so conclusively as the principal to whom they are referred?

"If the decision of these questions is to depend upon the weight of judicial authority up to the present time, it must be held that there is no power to refer the adoption or rejection of a general law to the people of the State, any more than there is to refer it to any other authority. The prevailing doctrine in the courts appears to be that, except in those cases where, by the constitution, the people have expressly reserved to themselves a power of decision, the function of legislation cannot be exercised by them, even to the extent of accepting or rejecting a law which has been framed for their consideration. * * * The government of the State is democratic, but it is a representative democracy, and in passing general laws the people act only through their representatives in the legislature."

■ The reason why, in a representative democracy, the representatives of the people must not shift their responsibility to the electors, in the enactment of laws, is that the sense of a majority of the electors does not necessarily express the sense of a majority of their representatives, in the matter of expediency or inexpediency of a law. Let us take, as an illustration, the question of expediency of the prohibition law, which is the question over which this case arose. From the fact that a majority of the electors voted to repeal the prohibition law, it does not follow, necessarily, that a majority of the members of the Legislature were in favor of repealing the law. The Senators are elected from their districts, respectively; and the members of the House of Representatives are elected from their parishes, respectively. If the majorities of the electors who are opposed to prohibition in the senatorial districts and in the parishes in which prohibition is unpopular outnumber the majorities of the electors who are in favor of prohibition in the senatorial districts and in the parishes where prohibition is popular, and if, nevertheless, prohibition is popular in a majority of the senatorial districts or in a majority of the parishes, it may well be that a majority of the electors are in favor of repealing the prohibition law, while a majority of their representatives in the Legislature are opposed to repealing the law. In fact, a reference to page 971 of the Official Journal of the House of Representatives, for the session of 1932, discloses that a majority of the members of the house were then opposed to a repeal of the prohibition law. The journal shows that House Bill No. 8, being "An act to repeal Act No. 39 of 1921," etc., was defeated by a vote of 51 to 36.

Adverting now to Act No. 238 of 1932, we quote from page 240 of Cooley's Constitutional Limitations, viz:

"Nor, it seems, can such legislation be sustained as legislation of a conditional character, whose force is to depend upon the happening of some future event, or upon some future change of circumstances.

"The event or change of circumstances on which a law may be made to take effect must be such as, in the judgment of the Legislature, affects the question of expediency of the law,—an event on which the expediency of the law in the opinion of the law-makers depends. On this question of expediency the legislature must exercise its own judgment definitely and finally. When a law is made to take effect upon the happening of such an event, the legislature in effect declares the law inexpedient if the event should not happen, but expedient if it should happen. They appeal to no other man or men to judge for them in relation to its present or future expediency. They exercise that power themselves, and then perform the duty which the Constitution imposes upon them."

And from page 242 we quote:

"The same reasons which preclude the original enactment of a law from being referred to the people would render it equally incompetent to refer to their decision the question whether an existing law should be repealed. If the one is 'a plain surrender to the people of the law-making power', so is the other."

From 12 C. J. § 323, pp. 839, 840, we quote:

"It is a doctrine well established and frequently reiterated by the courts that the functions of the legislature must be exercised by it alone, and cannot be delegated. * * * Power, the exercise of which would effect the repeal of existing provisions of a general law, may not be delegated."

And, from section 324, pp. 841 and 842, we quote:

"A constitutional provision that the legislative power shall be vested in a senate and assembly prohibits the legislature from converting the government into a pure democracy, or rendering the enactment of a law dependent on its acceptance by the voters of the state. It does not, however, forbid the enactment of laws delegating to the people of local subdivisions of the state the decision of questions concerning them alone, or making the operation of certain laws within such subdivisions contingent on a vote of the people thereof."

Our conclusion is that Act No. 238 of 1932 is unconstitutional, and that Act No. 39 of 1921 (Ex. Sess.), as amended by Act No. 57 of 1924, is therefore yet in force.

▮ It is contended by counsel for Herbert Watkins that a district attorney, being charged with the duty of enforcing the laws, has no right to plead that a law is unconstitutional. In support of the argument, three decisions are cited, viz.: State ex rel. Hall, District Attorney, v. Judge of Tenth Judicial District, 33 La. Ann. 1222, State ex rel. Nicholls, Governor, v. Shakespeare, Mayor of New Orleans, 41 La. Ann. 156, 6 So. 592, and State ex rel. Banking Co., etc., v. Heard, Auditor, 47 La. Ann. 1679, 18 So. 746, 47 L. R. A. 512. These decisions do not forbid a district attorney to plead that a statute is unconstitutional if he finds it in conflict with

one which it is his duty to enforce. In State ex rel. Hall, District Attorney, v. Judge, etc., the ruling was that the judge should not, merely because he believed a certain statute to be unconstitutional, forbid the district attorney to file a bill of information charging a person with a violation of the statute. In other words, a judge should not judicially declare a statute unconstitutional until the question of constitutionality is tendered for decision, and unless it must be decided in order to determine the right of a party litigant. State ex rel. Nicholls, Governor, etc., is authority for the proposition merely that an officer on whom a statute imposes the duty of enforcing its provisions cannot avoid the duty upon the ground that he considers the statute unconstitutional, and hence in enforcing the statute he is immune from responsibility if the statute be unconstitutional. State ex rel. Banking Co., etc., is authority for the proposition merely that executive officers, e. g., the state auditor and state treasurer, should not decline to perform ministerial duties imposed upon them by a statute, on the ground that they believe the statute is unconstitutional.

It is the duty of a district attorney to enforce the criminal laws of the state, and, above all, to support the Constitution of the state. If, in the performance of his duty he finds two statutes in conflict with each other, or one which repeals another, and if, in his judgment, one of the two statutes is unconstitutional, it is his duty to enforce the other; and, in order to do so, he is compelled to submit to the court, by way of a plea, that one of the statutes is unconstitutional. If it were not so, the power of the Legislature would be free from constitutional limitations in the enactment of criminal laws.

The conviction and sentence are affirmed.

ST. PAUL, J., absent because of illness.