57 So.2d 673

CITY OF ALEXANDRIA v. ALEXANDRIA FIRE FIGHTERS ASS'N, LOCAL NO. 540, et al.

No. 40244.

Feb. 18, 1952.

Frank H. Peterman, Alexandria, for plaintiff-appellee.

McCALEB, Justice.

By Act 239 of 1950, which amended and reenacted Section 1994 of Title 33 of the Louisiana Revised Statutes of 1950, LSA–R.S., relative to the maximum hours of work required of firemen, the right was accorded to members of the fire department of any city with a population of between 15,000 and 250,000 to decide by their vote whether they would work a maximum of sixty hours per week. The City of Alexandria, asserting that this provision of the Act is unconstitutional in that it delegates to the firemen the right to make laws, brought suit against appellant, a labor union composed of the members of the Alexandria Fire Department, for a judgment declaring that such was the case. After a hearing in the trial court, the contention of the city was maintained and a declaratory judgment entered holding the assailed provision unconstitutional. Thereupon, appellant brought the case here for review.[1]

The pertinent part of LSA–R.S. 33:1994, as amended by Section 1 of Act 239 of 1950, reads: "The maximum hours of work required of firemen covered by this Subpart in cities having a population in excess of two hundred fifty thousand in any one calendar week shall be sixty hours, and in

Polk & Culpepper and Gravel & Downs, all of Alexandria, for defendant-appellant.

1. Properly so. Section 10 of Article 7 of the Constitution vests appellate jurisdiction in this court in all cases wherein a law of the State has been declared unconstitutional.

municipalities having a population of two hundred fifty thousand or less, covered by this Sub-part, seventy-two hours. * * * Provided, however, that in any municipality having a population of not less than fifteen thousand (15,000) nor more than two hundred fifty thousand (250,000) if at an election held for that purpose, the majority of the members of the fire department of any city having a maximum work week of seventy two hours, should so vote, the maximum hours of work required of firemen as herein provided in such city shall not be in excess of sixty hours in any one calendar week. * * *"

The challenge of the City of Alexandria directed against the constitutionality of the above quoted proviso of R.S. 33:1994 is that the Legislature, by vesting in the firemen of the affected cities the right to change by their vote the maximum weekly working hours from 72 to 60, has surrendered to these individual groups its exclusive authority to legislate upon such police regulations.

Appellant denies that the assailed provision delegates to the firemen legislative authority. It asserts that the act is a complete law but that its operation has merely been suspended, being dependent upon the occurrence of a designated contingency or event, i. e., the vote of the firemen of any city of the designated class, and that such legislation is permissible.

 It is an elementary principle of constitutional law that legislative power, conferred under constitutional provisions,[2] cannot be delegated by the Legislature either to the people or to any other body or authority. State v. Watkins, 176 La. 837, 147 So. 8, citing Cooley's Constitutional Limitations, 8th Ed. Vol. 1, pp. 224, 238, 239, 240, 242, 244; 16 C.J.S., Constitutional Law, § 133; 11 Am.Jur. Sec. 214.

However, an exception to this general doctrine is recognized in certain instances involving delegation to local political subdivisions. Thus, it is well established that the Legislature may delegate a part of its power over local subjects to municipal corporations and other public bodies "within the legislative classification of departments". 11 Am.Jur. Sections 223 and 224. State v. Watkins, supra. And, too, the maxim does not forbid the delegation of powers which are not purely legislative in nature, that is, powers which may properly be exercised by the lawmaker but which are of a nonlegislative character. 11 Am. Jur. Sec. 214, p. 923. Accordingly, the Legislature may confer upon an executive or administrative officer or board discretion in the administration of the law with the right to determine facts or a state of things upon which the law makes or intends to

2. Section 1 of Article 3 of the Constitution of Louisiana vests the legislative power of the State in the Legislature, consist-

ing of a Senate and House of Representatives.

make its own action depend, provided that the statute establish a sufficient basic standard and rule of action for the guidance of the instrumentality or officer that is to administer the law. 16 C.J.S., Constitutional Law, § 133a, pp. 340, 341; 11 Am.Jur. Sec. 232.

Another exception to the rule is made as to legislation conditioned for its operation upon the happening of a certain contingency or future event. 11 Am. Jur. Sec. 216; 16 C.J.S., Constitutional Law, § 141; Cooley's Constitutional Limitations, 8th Ed. Vol. 1, pp. 242, 243 and 244. The reason for the allowance of this exception (which is in many cases obviously violative of the cardinal principle) is stated in 11 Am.Jur. Sec. 216 to be "that it is not always essential that a legislative act must in any event take effect as law after it leaves the hands of the legislature. If the law is in its provisions a complete statute in other respects, its taking effect may be made conditional upon some subsequent event. When that event happens, the statute takes effect and becomes the law by force of legislative action as fully as if the time when it should take effect had been unconditionally fixed".

■ Considering the provision under attack in this case in the light of the foregoing tenets, we find it impossible to uphold it. The statute fixes the maximum hours of work for firemen in municipalities, having a population of 250,000 or less, during any calendar week at 72. This,

unquestionably, the legislature had the right to do. But when it declares that the firemen in municipalities having a population of not less than 15,000 nor more than 250,000 may, by a vote of the majority of the members of the fire department, reduce the maximum work week from 72 to 60 hours, the Legislature proceeds to confer upon the majority of firemen in any and all such cities the right to change and amend the law. This is purely a legislative function which cannot be delegated to any private group.

■ And we think it manifest that the power conferred on the firemen cannot be fitted into any of the categories of permissive legislative delegation through which the fate of unconstitutionality may be averted. This is not, as counsel for appellant contend, a case wherein the assailed provision can be upheld on the basis that it is legislation which merely becomes effective upon the happening of a specified event. Laws, to be sustainable on the theory that they are complete in themselves but that their effectiveness is contingent upon the occurrence of an event, are generally, according to Judge Cooley, local option enactments, that is, legislation which is submitted to the people of a certain locality and which is sustained as a proper delegation of legislative power because it is accepted that local judgment on such matters should control. See Cooley's Constitutional Limitations, 8th Ed. Vol. 1, page 245. And, although it appears in the multitudinous authorities on this subject that a few courts

have extended this exception in favor of contingent legislation so as to include within its scope matters which are not truly local option laws, this Court is not among that number. On the contrary, in City of Shreveport v. Price, 142 La. 936, 77 So. 883, State v. Watkins, supra, and the companion cases of State v. Malone, 176 La. 846, 147 So. 11, State v. Antee, 176 La. 847, 147 So. 11, City of Shreveport v. Malone, 176 La. 848, 147 So. 12, State v. Capps, 176 La. 849, 147 So. 12 and State v. Washburn, 177 La. 27, 147 So. 489, and State v. Maitrejean, 193 La. 824, 192 So. 361, our predecessors have affirmed and reaffirmed strict adherence to the principle that legislative power may not be delegated, save to municipal corporations and other local political subdivisions, and then only in such measure for which justification clearly appears by reason of the exigencies of local government and by necessity or greater convenience in the administration of public affairs.

The case of State v. Watkins, supra, furnishes a classic example. There, the Legislature, by Act 238 of 1932, provided for a referendum submitting to the electors the question whether the State prohibition law should be repealed. The act was found to be unconstitutional as an improper delegation of legislative power notwithstanding that the referendum was submitted to the people themselves, the source of all law in a democracy.

In the case at bar, the assailed provision is of a far reaching nature in that the power is delegated to a majority of the firemen in each city within the classified population to determine whether they will work a maximum of 72 or 60 hours a week. This, to paraphrase the Supreme Court of the United States in Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 876, 80 L.Ed. 1160, "is legislative delegation in its most obnoxious form; for it is not even delegation to an official or an official body, presumptively disinterested, but to private persons * * *" who, by a majority vote, may force the police regulation upon an unwilling minority and the taxpayers of the municipality.

In the Carter Coal Co. case, where an Act of Congress provided, in part, that the maximum daily and weekly hours of labor should be those as were agreed upon in any contract or contracts negotiated between the producers of more than $2/3$ of the annual national coal tonnage production for the preceding calendar year and the representatives of more than $1/2$ of the mine workers employed, the position taken by the Government, in answer to the constitutional challenge of an improper delegation of legislative power, was that it was merely legislation which became effective on the happening of a specified event (the same as contended in the instant case) and that the event was the agreement of a certain proportion of producers and employees which became legally binding upon all other producers and employees. This contention, which was rejected by the majority opin-

ion, was the subject of special comment by Chief Justice Hughes in a separate concurring opinion. He said: "I think that the argument is unsound and is pressed to the point where the principle would be entirely destroyed. It would remove all restrictions upon the delegation of legislative power, as the making of laws could thus be referred to any designated officials or private persons whose orders or agreements could be treated as 'events,' with the result that they would be invested with the force of law having penal sanctions."

In their efforts to sustain the constitutionality of the challenged provision of Act 239 of 1950 as conditional legislation not involving an improper delegation of legislative power, counsel for appellant rely heavily upon Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441, which was decided in 1938, three years after Carter v. Carter Coal Co. That case, which involved the validity of the tobacco inspection act adopted by Congress, bears little resemblance to the matter at hand. There, Congress had found that the classification of tobacco according to type and grade affected the price received and that, without uniform standards, its value was susceptible to manipulation and speculation. Declaring that uniform standards for the protection of producers and others engaged in commerce was imperative in the tobacco

industry, Congress authorized the Secretary of Agriculture to investigate the handling, inspection and marketing of the product and establish standards by which the type and grade might be determined. As an incident to the power vested in the administrative officer (Secretary of Agriculture), he was authorized to designate the markets in which tobacco was to be bought and sold at auction for movement in commerce. But he was not to designate a market unless $\frac{2}{3}$ of the growers, voting at a special referendum, favored it. That provision of the statute, among others, was attacked on the ground that it was an unconstitutional delegation of legislative power. But the Court rightly rejected the argument, simply stating that this was not an attempted surrender of any legislative functions but merely the vesting in an administrative officer the right to determine facts and make decisions according to proper standards under which the legislative policy, as declared by Congress, was to apply. Insofar as the required referendum by the Secretary of Agriculture to the growers of tobacco was concerned, the court said that this did not "involve any delegation of legislative authority" and that it was merely a condition under which the Secretary was to be bound in the exercise of his administrative powers under the Act.[3]

3. The opinion in Currin v. Wallace, supra, delivered by Chief Justice Hughes, comments upon and distinguishes Carter v. Carter Coal Co., supra, on the ground that, there, the producers were given the right to make the law and force it on a minority.

Accordingly, it is perceived that Currin v. Wallace, supra, is predicated entirely upon the delegation to an administrative officer of authority to find facts and exercise discretion in the application of legislative policy under proper guideposts and standards. The provision respecting the referendum by the tobacco growers, in order for the Secretary to designate a market, was merely a limitation upon his administrative authority; it was not comparable to a case like this, where the vote of the firemen and not of the Legislature effects a change in the law.

The judgment appealed from is affirmed.

HAMITER, Justice (dissenting).

In determining whether the statute assailed herein delegates legislative authority and, for that reason, is unconstitutional, certain well established principles must be kept in mind.

A legislative act is presumed to be legal until it is shown that it is manifestly unconstitutional, and all doubts as to its validity are resolved in favor of its constitutionality. Board of Barber Examiners of Louisiana v. Parker, 190 La. 214, 182 So. 485.

Further, as said in 11 American Jurisprudence verbo Constitutional Law, Section 216: "The rule is well settled that while the legislature may not delegate its power to make a law, it may make a law to become operative on the happening of a certain contingency or future event. *More-over, in general it makes no essential difference what is the nature of the contingency if it is essentially just and legal.* The reason for this rule is that it is not always essential that a legislative act must in any event take effect as law after it leaves the hands of the legislature. If the law is in its provisions a complete statute in other respects, its taking effect may be made conditional upon some subsequent event. When that event happens, the statute takes effect and becomes the law by force of legislative action as fully as if the time when it should take effect had been unconditionally fixed." (Emphasis ours.)

Again, to quote from 16 C.J.S., Constitutional Law, § 141:

"It is the general rule that where an act is clothed with all the forms of law and is complete in and of itself, it is fairly within the scope of the legislative power to prescribe that it shall become operative only on the happening of some specified contingency, contingencies, or succession of contingencies. Such a statute lies dormant until called into active force by the existence of the conditions on which it is intended to operate.

"The legislature must itself fix the condition or event on which the statute is to operate, but it may confide to some suitable agency the fact-finding function as to whether the condition exists, or the power to determine, or the discretion to create, the stated event. *The nature of the condi-*

*tion is, broadly, immaterial.* Generally, it may consist of the determination of some fact or state of things on the part of the people or a municipality or other body or officers; or, it may consist of some act or acts to be performed by public officers or bodies, or by the people or parties interested, except that the execution of a statute may not be conditioned on the unbridled discretion of a single individual or an unduly limited group of individuals. * * *" (Emphasis ours.)

It seems clear from the foregoing that although the Legislature cannot delegate the exercise of its discretion as to what a law shall be, it may leave to selected instrumentalities the discretion of determining some fact or state of things upon which an adopted law makes or intends to make its own action depend. "* * * The true distinction is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law; the first cannot be done, to the latter no valid objection can be made. * * *" 16 C.J.S., Constitutional Law, § 133.

By Act 239 of 1950 (amending LRS 33:-1994, LSA–R.S.), which is the statute questioned herein, the Legislature sought to prescribe maximum hours of work in any one calendar week for all firemen employed full time by municipalities of the state. To this end it first fixed the maximum hours of the firemen in a city exceeding 250,000 population (applying now only to the City of New Orleans) at 60 hours. As to the remaining municipalities it realized, obviously, that in some, particularly the larger ones, the prevailing economic and other conditions (involving wages, living standards, amount of hazardous duty required, hours of other municipal employees, etc.) might be similar to those in the City of New Orleans and, therefore, the same maximum hours would be appropriate; whereas, in other cities, especially the smaller ones, different conditions existed which required a different maximum work week. With this realization, and being unable to properly legislate for all municipalities individually, the Legislature did the only thing feasible, in my opinion. It fixed a maximum for each municipality, other than New Orleans, of 72 hours; but then it specifically provided: "* * * that in any municipality having a population of not less than fifteen thousand (15,000) nor more than two hundred fifty thousand (250,000), if at an election held for that purpose, the majority of the members of the fire department of any city having a maximum work week of seventy two hours, should so vote, the maximum hours of work required of firemen as herein provided in such city shall not be in excess of sixty hours in any one calendar week."

The Legislature further declared: "The election herein provided for shall be called by the chief of the fire department if re-

quested so to do in writing by at least twenty-five percent of the members of the department. Notice of the election shall be given by posting in each station of the department involved at least thirty days prior to the holding of the election. The necessary ballot and tally sheets shall be furnished by the municipality and the election shall be conducted by commissioners selected from amongst the members of the department by the chief. No more than one election shall be held during any one calendar year."

Thus, the Legislature, by the foregoing provisions which constitute a statute clothed with all the forms of law and is complete in and of itself, established two maximum work weeks: one of 60 hours available to any city (in addition to New Orleans) of a population from 15,000 to 250,000 the economic and other conditions of which warranted it, and another of 72 hours for each of the remaining municipalities.

The enactment of this law—the legislative establishment of each of the two maximum work weeks—was not performed by the firemen of any city. Their sole function with reference to the law is to determine, as an instrumentality designated by the Legislature and as persons directly interested, whether the economic and other conditions—the state of things—of their respective municipalities require the 60 hour week rather than the 72 hour week. And for this purpose the statute itself vests them with the necessary discretion, it to be exercised in accordance with specific and well defined directions. When, under those directions, a majority of the members of the fire department of any city determine that the 60 hour week is required (by voting therefor), it becomes operative in that municipality, the stated event having occurred.

I am of the opinion, therefore, that with reference to the firemen the Legislature has merely conferred on them a discretion as to the execution of the instant statute, to be exercised under and in pursuance to its provisions; and that to this grant of authority there can be no valid objection.

Very similar in principle to the statute involved here was an Act of Congress assailed in Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 386, 83 L.Ed. 441. The Act related to transactions involving the sale of tobacco at auction as commonly conducted at auction markets. It authorized the Secretary of Agriculture to investigate the handling, inspection and marketing of tobacco, and to establish standards by which its type, grade, size, condition or other characteristics might be determined. It further authorized him to designate those markets where tobacco bought and sold at auction or the products customarily manufactured therefrom move in commerce. But he was not to designate a market *unless two-thirds of the growers, voting at a prescribed referendum, favor it.* In holding that the Act did not delegate any legislative powers the court first said: " * * *

This is not a case where Congress has attempted to abdicate, or to transfer to others, the essential legislative functions with which it is vested by the Constitution, * * *. *We have always recognized that legislation must often be adapted to conditions involving details with which it is impracticable for the legislature to deal directly.* * * *" (Emphasis ours.)

The court in the Currin case then discussed separately the functions of the tobacco growers and the Secretary of Agriculture under the Act. As to the former, whose functions were closely akin to those of the firemen under the instant state statute, it said: "So far as growers of tobacco are concerned, the required referendum does not involve any delegation of legislative authority. Congress has merely placed a restriction upon its own regulation by withholding its operation as to a given market 'unless two-thirds of the growers voting favor it'. Similar conditions are frequently found in police regulations. Cusack Co. v. Chicago, 242 U.S. 526, 530, 37 S.Ct. 190, 191, 61 L.Ed. 472 [475], L.R.A.1918A, 136, Ann.Cas.1917C, 594. This is not a case where a group of producers may make the law and force it upon a minority (see Carter v. Carter Coal Co., 298 U.S. 238, 310, 318, 56 S.Ct. 855, 872, 876, 80 L.Ed. 1160 [1188, 1192]) or where a prohibition of an inoffensive and legitimate use of property is imposed not by the legislature but by other property owners (see Washington ex rel. Seattle Title Trust Co. v. Roberge, 278 U.S. 116, 122, 49 S.Ct. 50,

52, 73 L.Ed. 210 [214], 86 A.L.R. 654). *Here it is Congress that exercises its legislative authority in making the regulation and in prescribing the conditions of its application.. The required favorable vote upon the referendum is one of these conditions.* * * *" (Emphasis ours.)

It is to be noticed from the above quotation that the United States Supreme Court distinguished the Carter Coal Co. case, relied on in the majority opinion herein, which it had decided three years previously. In my opinion it is also distinguishable from the instant case. The Act of Congress involved there delegated to the coal producers and miners the legislative power to *fix* maximum hours of labor and to *fix* minimum wages. Here the Legislature itself has *fixed* a maximum working week of 60 hours for the firemen of a city; and it has merely granted to those men, who are directly affected thereby, the authority to carry it into effect.

State v. Watkins, 176 La. 837, 147 So. 8, 9, on which the majority opinion is largely predicated, is also distinguishable. Unlike the instant statute, the Act therein attacked clearly delegated legislative power. As said in the opinion of that case it "merely provided for a referendum, submitting to the electors * * * the question whether the prohibition law, known as the Hood Act * * * should be repealed."

For the foregoing reasons, I respectfully dissent.