JOHNSON, Chief Justice.
|! This case is before us on direct appeal from a judgment of the district court declaring La. R.S. 3:3534(G)(2), (3) and La. R.S. 3:3544(E)(2), (3) unconstitutional.[1] For the following reasons, we amend and affirm the ruling of the district court.
FACTS AND PROCEDURAL HISTORY
Plaintiffs are producers of rice in Louisiana. In 1972, the Louisiana Legislature enacted La. R.S. 3:3531 et seq. and La. R.S. 3:3541, et seq. This statutory scheme established the Louisiana Rice Promotion Board and the Louisiana Rice Research Board (“the Rice Boards”), with the stated purpose to promote the growth and development of the rice industry in Louisiana by promotion of rice and expanded research of rice, thereby promoting the general welfare of the people of Louisiana.[2] |2The Rice Statutes[3] obligate rice producers to pay an assessment on rice produced in Louisiana “not to exceed three cents per hundredweight.”[4] However, the assessment is not imposed unless the rice producers approve it by majority referendum vote.[5] The question of whether to impose the assessment and the amount of the assessment, subject to the “maxima” provided in the statutes, must be submitted to and approved by a majority of the rice producers who vote in the referenda.[6] To be eligible to vote, a producer must have produced a rice crop in the year immediately preceding each referendum.[7] If approved, the assessment is effective for five years, but may be extended indefinitely in increments of five years, by ratification and approval by a majority vote of all the rice producers who voted in the referenda.[8] *387 After collection, the Commissioner of Agriculture is required to pay over the funds to the Rice Boards as instructed in the Rice Statutes.[9] The Rice Statutes originally provided any rice producer with the opportunity to request and receive a refund of the amount paid for the assessment.[10] However, the statutes were amended in 1992 to provide that the refund is not available if the voting majority of rice producers vote to abolish the refund provisions.[11]
Since the Rice Statutes went into effect, rice producers voting in the periodic referendums have approved the levy of an assessment. The refund provisions were |sabolished in the 1992 referendum. Plaintiffs, approximately forty rice producers, filed suit against the Louisiana Department of Agriculture and Forestry (“LDAF”) and the Rice Boards, challenging the constitutionality of the Rice Statutes both on their face and as applied.[12]
Thereafter, plaintiffs filed a motion for summary judgment seeking to declare La. R.S. 3:3584 and La. R.S. 3:3544 facially unconstitutional on the ground those statutes permit an improper delegation of legislative authority, in violation of La. Const, art. Ill, § l.[13] Plaintiffs argued the Rice Statutes permit a small group of private citizens to determine by majority vote whether the LDAF shall enforce and collect statutory assessments on rice, and whether the refund provisions will be abolished.
The district court granted plaintiffs’ motion for summary judgment in part, declaring those sections of the Rice Statutes relative to abolishment of the refunds, La. R.S. 3:3534(G)(2), (3)[14] and La. R.S. 3:3544(E)(2), (3),[15] unconstitutional. The LDAF, State of Louisiana and the Rice Boards directly appealed to this court. The | ¿Plaintiffs answered the .appeal, asserting La. R.S. 3:3534 and 3:3544 are facially unconstitutional in their entirety.
DISCUSSION
Determining whether a statute is constitutional is a legal question and thus reviewed de novo.[16] As a result, we nor *388 mally review all of the constitutional challenges advanced in the district court.[17] Additionally, plaintiffs have cross-appealed in this ease, asserting the Rice Statutes are unconstitutional in their entirety. Thus, although the district court only held certain parts of the Rice Statutes unconstitutional, and it is that ruling before us on direct appeal, we will address the issues raised in plaintiffs cross-appeal and consider whether La. R.S. 3:3534 and 3544 are facially unconstitutional in their entirety as an improper delegation of legislative authority.
In determining the constitutionality of the Rice Statutes, we begin with the premise that statutes are generally presumed to be constitutional.[18] And, because statutes are presumed constitutional, the party challenging the statute bears the burden of proving its unconstitutionality.[19] Importantly, the provisions of the Louisiana Constitution are not grants of power, but instead are limitations on the otherwise plenary power of the people exercised through the legislature.[20] Thus, the legislature may enact any legislation that the state constitution does not prohibit.[21] In order to | Bfind legislation invalid under the constitution, it is necessary to rely on some particular constitutional provision that limits the power of the legislature.[22]
The Louisiana Constitution divides the powers of government into three separate branches: legislative, executive and judicial.[23] Our constitution further provides that no branch may exercise power belonging to another.[24] The legislative power of the State rests exclusively in the Legislature.[25] Thus, it is axiomatic that the legislature is vested with the sole law-making power of the State.[26]
Because of the constitutional separation of powers, delegation of legislative power is generally prohibited.[27] We have recognized “that legislative power, conferred under constitutional provisions, cannot be delegated by the Legislature either to the people or to any other body of authority.”[28] However, as an exception to this rule, this court has recognized that the legislative branch has the authority to delegate to administrative boards and agencies of the State the power to ascertain and determine the facts upon which the laws are to be applied and enforced.[29] We have noted that “delegation of certain ad *389 ministrative functions is necessary because of the vast amount of governmental functions that are vested in the legislative branch, which cannot possibly enact and re-enact detailed laws to cover every situation during [(¡rapidly changing times.”[30] We have also recognized an exception for contingent legislation, where the legislation is conditional for its operation on the happening of a certain contingency or future event.[31]
The Rice Boards generally assert the Rice Statutes are contingent legislation. Thus, the Rice Statutes do not contain a delegation of power to make the law, which necessarily involves discretion as to what it shall be, but rather confer an authority or discretion as to its execution, to be exercised under and in pursuance of the law. As to the refund provisions, the Rice Boards assert the Legislature simply made the continued implementation of the refund provisions after January 1, 1992, dependent upon a referendum of those affected. The fact that a majority of the rice producers voted to abolish the refunds did not equate to the rice producers abolishing a legislative mandate enacted by the Legislature. The assessments were only in place because the majority of rice producers voted for it. Otherwise, the refund provisions would never come into play. According to the Rice Boards, the Legislature decided that the refunds could be abolished and simply allowed the affected group to decide whether the refunds should continue to take effect.
The LDAF additionally argues the Legislature may delegate to state boards, such as the Rice Boards, the power to ascertain and determine the facts upon which the laws are to be applied and enforced. In directing by statute how the Rice Boards must be composed, the Legislature ensured that the board members would have the specialized expertise necessary to carry out the vital public interests of rice research and rice promotion. The LDAF argues the Rice Statutes do not allow anyone to “make law.” The vote of the rice producers only implements the law as the Legislature has dictated it. The LDAF asserts the Rice Statutes are complete in the 17expression of legislative will and the statutory scheme enacted to carry it out.
By contrast, the plaintiffs argue that on facial examination, the Rice Statutes clearly violate the Louisiana Constitution. The assessments established by the Rice Statutes are only imposed, extended, or refundable based on an election of private citizens, certain rice producers. Those private elections determine the very existence of the assessment, as well as its duration and character. The Legislature cannot delegate to private citizens the power to create or repeal laws. Plaintiffs also argue the Rice Statutes are not reliant on a contingent event, but rather the legislatively mandated refunds only become effective upon the happening of a referendum by private persons who, by majority vote, may force such regulation upon an unwilling minority.
Further, Plaintiffs argue the Legislature cannot create regulations or delegate actions that require officials or administrative bodies to exercise primary and independent discretion. The Rice Statutes go far beyond a delegation of ministerial authority because they expressly empower private citizens to decide whether to impose or nullify the assessments. Here, neither the Legislature nor the Rice Boards retained any discretion to approve, disapprove or modify the assessment deci *390 sions reached by the selected rice producers.
Both plaintiffs and defendants rely on United States Supreme Court decisions to support their respective positions. Plaintiffs cite the leading Supreme Court case discussing the improper delegation of legislative authority, Carter v. Carter Coal,[32] involving the Bituminous Coal Conservation Act. The Act brought every producer of coal in the United States under its provisions. The Act, in part, delegated the power to fix maximum hours and minimum wages to certain producers and miners who | sproduced more than a particular percentage of the annual tonnage the preceding calendar year. The stockholders of Carter Coal Company brought suit against the board of directors to enjoin it from complying with the Act. The Supreme Court held this provision of the Act unconstitutional as an unlawful delegation of legislative power. The Court reasoned:[33]
The power conferred upon the majority is, in effect, the power to regulate the affairs of an unwilling minority. This is legislative delegation in its most obnoxious form; for it is not even delegation to an official or an official body, presumptively disinterested, but to private persons whose interests may be and often are adverse to the interests of others in the same business. * * * Some coal producers favor the code; others oppose it; and the record clearly indicates that this diversity of view arises from their conflicting and even antagonistic interests. The difference between producing coal and regulating its production is, of course fundamental. The former is a private activity; the latter is necessarily a government function, since, in the very nature of things, one person may not be intrusted with the power to regulate the business of another, and especially of a competitor. And a statute which attempts to confer such power undertakes an intolerable and unconstitutional interference with personal liberty and private property.
The Rice Boards cite a subsequent Supreme Court case in support of their position. In Currin v. Wallace,[34] the Court considered a constitutional challenge to the Tobacco Inspection Act. That Act provided in part that the Secretary of Agriculture was authorized to designate the markets where tobacco bought and sold at auction, or the products manufactured therefrom, move in commerce. However, the Secretary was not to designate a market unless two-thirds of the growers voting at a referendum favored it. The Plaintiffs, tobacco warehousemen and auctioneers, challenged the Act partly on the basis that it provided for an unconstitutional delegation of legislative power.
The Supreme Court did not find the delegation of power unconstitutional, reasoning it was “not a case where Congress has attempted to abdicate, or to transfer |3to others, the essential legislative function with which it is vested by the Constitution.”[35] Additionally, the Court held that “the required referendum does not involve any delegation of legislative authority.” [36] The Court stated:[37]
Congress has merely placed a restriction upon its own regulation by withholding *391 its operation as to a given market “unless two-thirds of the growers voting favor it.” Similar conditions are frequently found in police regulations. This is not a case where a group of producers may make the law and force it upon a minority or where a prohibition of an inoffensive and legitimate use of property is imposed not by the legislature but by other property owners. Here it is Congress that exercises its legislative authority in making the regulation and in prescribing the conditions of its application. The required favorable vote upon the referendum is one of these conditions.
Carter and Cwrrin were both addressed by this court in City of Alexandria v. Alexandria Firefighters Association. That case involved a constitutional challenge to Act 239 of 1950, which amended La. R.S. 38:1994 governing maximum hours for firemen. La. R.S. 33:1994, as amended by Act 239, provided in part:[38]
The maximum hours of work required of firemen covered by this Subpart in cities having a population in excess of two hundred fifty thousand in any one calendar week shall be sixty hours, and in municipalities having a population of two hundred fifty thousand or less, covered by this Sub-part, seventy-two hours. * * * Provided, however, that in any municipality having a population of not less than fifteen thousand (15,000) nor more than two hundred fifty thousand (250,000) if at an election held for that purpose, the majority of the members of the fire department of any city having a maximum work week of seventy two hours, should so vote, the maximum hours of work required of firemen as herein provided in such city shall not be in excess of sixty hours in any one calendar week. * * *
Plaintiff, the City of Alexandria, filed suit alleging Act 239 constituted an unconstitutional delegation of legislative power because it delegated to the firemen the right to make laws. Specifically, the City asserted that the Legislature, by vesting |inin the firemen of the affected cities the right to change by their vote the maximum weekly working hours from severity-two to sixty, had surrendered to these individual groups its exclusive authority to legislate upon such police regulations.[39] The defendant labor union argued, as do the defendants in this case, that the Act was permissible contingent legislation, depending on a future event, i.e., the vote of the firemen of any city of the designated class.[40] This court held the Act unconstitutional. While recognizing the general doctrine that legislative power conferred under constitutional provisions cannot be delegated by the Legislature to the people or to any other body or authority, we also recognized an exception as to legislation conditioned for its operation upon the happening of a certain contingency or future event.[41] We explained the reasons for the allowance of this exception:[42]
[I]t is not always essential that a legislative act must in any event take effect as law after it leaves the hands of the legislature. If the law is in its provisions a complete, statute in other respects, its taking effect may be made conditional upon some subsequent event. When that event happens, the statute takes effect and becomes the law by force of legislative action as fully as if *392 the time when it should take effect had been unconditionally fixed.
However, this court found Act 239 did not fall under the exception. In so doing, we specifically rejected the broad adherence to the contingency exception set forth in Currin, finding the exception applicable only to local option enactments:[43]
And we think it manifest that the power conferred on the firemen cannot be fitted into any of the categories of permissive legislative delegation through which the fate of unconstitutionality may be averted. This is not, as counsel for appellant contend, a case wherein the assailed provision can be upheld on the basis that it is legislation which merely becomes effective upon the happening of a specified event. Laws, to be | n sustainable on the theory that they are complete in themselves but that their effectiveness is contingent upon the occurrence of an event, are generally ... local option enactments, that is, legislation which is submitted to the people of a certain locality and which is sustained as a proper delegation of legislative power because it is accepted that local judgment on such matters should control. And, although it appears in the multitudinous authorities on this subject that a few courts have extended this exception in favor of contingent legislation so as to include within its scope matters which are not truly local option laws, this Court is not among that number. On the contrary, ... our predecessors have affirmed and reaffirmed strict adherence to the principle that legislative power may not be delegated, save to municipal corporations and other local political subdivisions, and then only in such measure for which justification clearly appears by reason of the exigencies of local government and by necessity or greater convenience in the administration of public affairs. (Emphasis added).
This court further cited as an example our decision in State v. Watkins.[44] In Watkins, the Legislature in Act 238 of 1932, provided for a referendum submitting to the electors of the State the question of whether Louisiana’s prohibition law should be repealed. We found the Act to be unconstitutional as an improper delegation of legislative power notwithstanding that the referendum was submitted to the people of the state. This court explained: [45]
The same reasons which preclude the original enactment of a law from being referred to the people would render it equally incompetent to refer to their decision the question whether an existing law should be repealed. If the one is a plain surrender to the people of the law-making power, so is the other.
[[Image here]]
A constitutional provision that the legislative power shall be vested in a senate and assembly prohibits the legislature from convering the government into a pure democracy, or rendering the enactment of a law dependent on its acceptance by the voters of the state. It does not, however, forbid the enactment of laws delegating to the people of local subdivisions of the state the decision of questions concerning them alone, or making the operation of certain laws within such subdivisions contingent on a vote of the people thereof.
In City of Alexandria, this court distinguished and rejected the holding of *393 Currin, finding it was “predicated entirely upon the delegation to an administrative officer of authority to find facts and exercise discretion in the application of legislative policy under proper guideposts and standards.”[46] Further, “[t]he provision respecting the referendum by the tobacco growers, in order for the Secretary to designate a market, was merely a limitation upon his administrative authority; it was not comparable to a case like this, where the vote of the firemen and not of the Legislature effects a change in the law.”[47] This court concluded that Act 239 constituted an improper delegation of legislative authority to a private group:[48]
Considering the provision under attack in this case in the light of the foregoing tenents, we find it impossible to uphold it. The statute fixes the maximum hours of work for firemen in municipalities, having a population of 250,000 or less, during any calendar week at 72. This, unquestionably, the legislature had the right to do. But when it declares that the firemen in municipalities having a population of not less than 15,000 nor more than 250,000 may, by a vote of the majority of the members of the fire department, reduce the maximum work week from 72 to 60 hours, the Legislature proceeds to confer upon the majority of firemen in any and all such cities the right to change and amend the law. This is purely a legislative function which cannot be delegated to any private group.
[[Image here]]
In the case at bar, the assailed provision is of a far reaching nature in that the power is delegated to a majority of the firemen in each city within the classified population to determine whether they will work a maximum of 72 or 60 hours a week. This, to paraphrase the Supreme Court of the United States in Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 876, 80 L.Ed. 1160, “is legislative delegation in its most obnoxious form; for it is not even delegation to an official or an official body, presumptively disinterested, but to private persons ⅜ * * ” who, by a majority vote, may force the police regulation upon an unwilling minority and the taxpayers of the municipality.
We find no meaningful constitutional distinction in the instant case, thus we need 11slook no further than our decision in City of Alexandria to resolve this matter. Applying the precepts of City of Alexandria to this case, we find the Rice Statutes clearly violate the non-delegation doctrine. The relevant provisions of La. R.S. 3:3534 provide:
A. Levy of assessment.
(1) There is hereby levied an assessment at the rate not to exceed three cents per hundredweight, or the equivalent thereof, of dry rough “paddy” rice produced in this state and a rate not to exceed two and seventy one-hundredths cents per hundredweight, or the equivalent thereof, on rice produced in this state and sold on a “green weight” basis.
(2) The obligation to pay the assessment shall apply to the producer for all rice marketed by him. To facilitate collection, this assessment shall be deducted by each miller or handler from the amount paid the producer at the first point of sale only, whether within or without the state; however, the assessment shall not be imposed unless and until the question of its imposition has *394 been submitted to and been approved by a majority of the rice producers who vote in referendum as provided in Subsection B of this Section.
* * *
B. Referendum.
(1)The levy of assessment as provided in Subsection A of this Section shall not be imposed unless and until the question of its imposition and, subject to the max-ima provided in Subsection A, the amount thereof, has been submitted to and been approved by a majority of the rice producers who vote in a referendum.
[[Image here]]
(8)If approved, the assessment shall be effective for a period of five crop years. It may be extended for an indefinite period of time, in increments of five years each, by ratification and approval by a majority vote of all the rice producers who vote in referendum to be called and held by the board in the manner set forth hereinabove.
(4) In all such referenda, in order to be eligible to vote, the producer must have produced rice in the crop year immediately preceding the referendum.
G. Refunds.
(1) Any rice producer may request and receive a refund of the amount 114deducted from his share of the proceeds from the sale of his rice provided he makes a written application with the commissioner within thirty days from the date of sale supported by copies of sales slips signed by the producer and provided further that the application is filed before the annual accounting is made and the funds paid to the board.
(2) Provided however, the refund as provided in this Subsection shall not be available if a majority of the rice producers who vote in a referendum to be called and held by the board after January 1, 1992, vote to abolish the refund provisions of this Subsection.
(8) If a majority of the rice producers who vote in such a referendum vote to abolish the refund provisions, such refund provisions shall be null and void and shall thereafter have no effect.
* * *
La. R.S. 3:3544 provides, in relevant part:
A. Levy of assessment.
(1) There is imposed and levied an assessment at the rate not to exceed three cents per hundredweight, or the equivalent thereof, of dry rough “paddy” rice produced in this state.
[[Image here]]
(3)The obligation to pay the assessment shall apply to the producer for all rice marketed by him. To facilitate collection, this assessment is to be deducted by each miller or handler from the amount paid the producer at the first point of sale only, whether within or without the state; however, the assessment shall not be imposed unless and until the question of its imposition and the amount thereof has been submitted to and been approved by a majority of the rice producers who vote in referendum to be called and held by the board ■within ninety days following the effective date of this Chapter. If the assessment is approved as provided in this Section, the assessment shall become effective July 1,1973.
[[Image here]]
(9) The assessment imposed by this Subsection shall be effective for a period of five crop years.
(10) Subject to the provisions of Subsection G of this Section, this assessment may be extended for an indefinite period of time in increments of five years each, *395 by ratification and approval of a majority vote of the rice producers who vote in referenda to be called and held by the board in the manner provided in Subsection B of this Section.
|1bB. Referendum. No assessment provided for in this Section shall be imposed unless and until the question of its imposition has been submitted to and has been approved by a majority of the rice producers who vote in a referendum to be called and held by the board. The board shall give notice of the results of the referendum to the rice producers of the state. In order to be eligible to vote in referenda conducted in accordance with this Subsection, each rice producer shall have produced rice in the crop year immediately preceding the crop year in which the referendum is held.
[[Image here]]
E. Refunds.
(1) Any rice producer may request and receive a refund of the amount deducted from his share of the proceeds from the sale of his rice provided he makes a written application with the commissioner within thirty days from the date of sale supported by copies of weight or settlement sheets by the buyer and provided further that the application is filed before the annual accounting is made and the funds paid to the board.
(2) Provided however, the refund as provided in this Subsection shall not be available if a majority of the rice producers who vote in a referendum to be called and held by the board after January 1, 1992, vote to abolish the refund provisions of this Subsection.
(3) If a majority of the rice producers who vote in such a referendum vote to abolish the refund provisions, such refund provisions shall be null and void and shall thereafter have no effect.
[[Image here]]
First, we find the Legislature does not have the authority to delegate the question of imposition of the assessment to the rice producers. La. R.S. 3:35S4(B)(1) and La. R.S. 3:3544(A)(3) allow private citizens the right to determine whether the Legislature’s assessment provision will take effect. The vote is not subject to review by the Legislature or by any administrative agency, such as the Rice Boards. The sole decision on whether the assessments will be imposed is made by private persons, the rice producers.
Additionally, we do not agree with defendants’ argument that the statutes merely constitute contingent legislation. While the Legislature can make the | ^operation or application of a statute contingent upon the existence of certain facts and conditions, it cannot condition imposition of the law upon the vote of a private group. As we explained in City of Alexandria, this court has limited the exception to contingent legislation involving approval by referendum to local option laws. We are not inclined to expand application of the exception. The referendums set forth in the Rice Statutes do not constitute local options elections. In particular, the referendums are not limited to a specific locality, but apply state-wide to all rice producers. Thus, the contingency exception does not apply in this case.
The Rice Statutes also violate the non-delegation doctrine by giving a private group the power to decide whether the law governing the refunds will change. La. R.S. 3:3534(G)(2) and La. R.S. 3:3544(E)(2) grant to a majority of the rice producers the power to repeal the Legislature’s grant of a refund. In particular, the use of the term “abolish,” indicates the power to actually repeal legislation. Further, this *396 power is expansive in that it allows the rice producers to permanently repeal this legislation by voiding the Legislature’s refund provisions such that they “thereafter have no effect.”[49]
Finally, the Rice Statutes unconstitutionally delegate legislative power to the rice producers to set the rate of the assessment. La. R.S. 3:3534(B)(1) and La. R.S. 3:3544(A)(3) provide that the assessment shall not be imposed until the “question of its imposition” and “the amount thereof’ has been submitted to and voted on by a majority of the rice producers who vote at the referendum.[50] As with the imposition of the assessment itself, the amount of the assessment is voted on by the rice producers. Because the legislature did not set the amount of the assessment in the statute, it has delegated to the rice producers the power to determine what the law will |i7be. Presumably the Rice Boards have the power to choose the amount of the assessment placed on the ballot, subject to the three-cent maxima. Such a delegation of power to the Rice Boards does not satisfy constitutional requirements.
To determine whether a particular delegation of legislative authority is unconstitutional, we rely on the rule established by this Court in Schwegmann Brothers Giant Super Markets v. McCra-ry, Commissioner of Agriculture.[51]
So long as the regulation or action of the official or board authorized by statute does not in effect determine what the law shall be, or involve the exercise of primary and independent discretion, but only determines within prescribed limits some fact upon which the law by its own terms operates, such regulation is administrative and not legislative in its nature.
This rule requires courts to distinguish between “delegations of purely legislative authority, which necessarily violate the separation of powers, and delegations of ministerial or administrative authority, which do not.”[52] Guided by these principles, this Court has developed a three-part test to ascertain whether a statute unconstitutionally delegates legislative authority.[53] A delegation of authority to an administrative agency is constitutionally valid if the statute: 1) contains a clear expression of legislative policy; 2) prescribes sufficient standards to guide the agency in the execution of that policy; and 3) is accompanied by adequate procedural safeguards to protect against abuse of discretion by the agency.[54] This test serves two functions vital to preserving the separation of powers required by the Constitution:[55]
First, it insures that the fundamental policy decisions in our society will be made not by an appointed official but by the body immediately | ^responsible to the people. Second, it prevents judicial review from becoming merely an exercise at large by providing the courts with some measure against which to judge the official action that has been challenged.
*397 Moreover, we have explained the importance and necessity of each part of the test:[56]
Application of the Schwegmann three-prong test ensures the elected members of the Louisiana Legislature retain all legislative power by insisting that they, not their delegates in the executive branch, make the difficult policy choices for which they are accountable to the public through the democratic process. Furthermore, by insisting that the enabling statute prescribe not only the legislative policy to be enforced by the agency but also sufficient standards to guide or “canalize” the agency’s execution of the legislative will, the test ensures the statute delegates only administrative or ministerial authority and guards against delegations of unbridled legislative discretion and the danger of “delegation running riot.” Additionally, because even delegations of administrative or ministerial authority require agencies to exercise some discretion in executing the legislative will, the requirement of adequate procedural safeguards ensures the agency exercises that discretion in accordance with the policy and standards prescribed in the enabling statute and consistent with democratic values served by public participation and judicial review.
Application of the three-prong test set forth in Schwegmann and All Pro Paint compels us to conclude that the Rice Statutes fail to establish a constitutionally valid delegation of power to the Rice Boards to set the amount of the assessments. Examining the first prong of the test, we do find the Rice Statutes contain a sufficient expression of legislative policy. La. R.S. 3:3582 provides: “The purpose of this Chapter is to promote the growth and development of the rice industry in Louisiana by expanded research of rice, thereby promoting the general welfare of the people of this state.” Similarly, La. R.S. 3:3542 provides: “The purpose of this Chapter is to promote the growth and development of the rice industry in Louisiana by promotion of rice, thereby promoting the general welfare of the people of this state.” There is no question that the Legislature clearly expressed the policy behind the Rice Statutes. Thus, we find the Act sets forth a defined statement of legislative policy sufficient to |iasatisfy the first prong of the test.
However, the Rice Statutes do not meet prongs two and three of the test. Other than setting a maximum assessment of three cents per hundredweight, the Rice Statutes contain no standards and provide no guidelines for the Rice Boards to consider in setting the amount of the assessment. Moreover, the Legislature did not retain any discretion to review, approve, disapprove or modify the assessment decision reached by the Board. This is not a case where the Legislature has merely delegated ministerial authority to the Rice Boards to determine the amount of the assessment by providing a blueprint for action or supplying factors or formulas.[57] Thus, the Rice Statutes fail to provide sufficient safeguards or standards by which the amount of the assessment can be measured.
We have recognized that to successfully challenge a legislative act as unconstitutional on its face, the challenger must establish that no set of circumstances exists under which the Act would be valid.[58] *398 Here, because we find the text and structure of the Rice Statutes themselves im-permissibly delegate legislative authority to private persons and to the Rice Boards, there are necessarily no circumstances under which application of the Rice Statutes can operate constitutionally.
CONCLUSION
In sum, we hold La. R.S. 3:3534 and La. R.S. 3:3544 are facially unconstitutional. The Rice Statutes delegate the power to impose the assessment, determine the amount of the assessment, and repeal the refund provisions, entirely to the rice producers. And, to the extent the power to set the amount of the assessment is delegated to the Rice Boards, the Rice Statutes do not contain sufficient standards 12nand safeguards to satisfy the test set forth in Schwegmann and All Pro Paint. The Legislature improperly transferred its assessment power to a particular group of private voters who can impose, maintain or revoke the assessment and right to refunds through private elections. As we stated in City of Alexandria, such action is “legislative delegation in its most obnoxious form.” Thus, we affirm and amend the district court’s judgment to declare La. R.S. 3:3534 and La. R.S. 3:3544 unconstitutional in their entirety.
DECREE
AFFIRMED AS AMENDED.

. La. Const, art. V, § 5(D) provides, in pertinent part: a case shall be appealable to the supreme court if (1) a law or ordinance has been declared unconstitutional.

. La. R.S. 3:3532, 3542.

. "Rice Statutes” refer to La. R.S. 3:3534 and La. R.S. 3:3544 for purposes of this opinion.

.La. R.S. 3:3534(A)(1), 3544(A)(1).

. La. R.S. 3:3534(A)(2), 3544(A)(3).

. La. R.S. 3:3534(B)(1), 3544(B).

. La. R.S. 3:3534(B)(4), 3544(B).

. La. R.S. 3:3534(B)(3), 3544(A)(9), (10).

. La. R.S. 3:3534(H), 3544(F).

. La. R.S. 3:3534(G)(1), 3544(E)(1).

. La. R.S. 3:3534(0(2), 3544(E)(2).

. Plaintiffs’ "as applied” challenge is not at issue in this appeal.

. La. Const, art. Ill, § 1 provides in pertinent part:
Section 1. (A) Legislative Power of State. The legislative power of the state is vested in a legislature, consisting of a Senate and a House of Representatives.

. La. 3:3534(G)(2) and (3) provide in pertinent part:
(2) Provided however, the refund as provided in this Subsection shall not be available if a majority of the rice producers who vote in a referendum to be called and held by the board after January 1, 1992, vote to abolish the refund provisions of this Subsection.
(3) If a majority of the rice producers who vote in such a referendum vote to abolish the refund provisions, such refund provisions shall be null and void and shall thereafter have no effect.

. La. R.S. 3:3544(E)(2), and (3) provide in pertinent part:
(2) Provided however, the refund as provided in this Subsection shall not be available if a majority of the rice producers who vote in a referendum to be called and held by the board after January 1, 1992, vote to abolish the refund provisions of this Subsection.
(3) If a majority of the rice producers who vote in such a referendum vote to abolish the refund provisions, such refund provisions shall be null and void and shall thereafter have no effect.

. Louisiana Municipal Association v. State, 04-0227 (La.1/19/05), 893 So.2d 809, 842.

. Id. at 843 (citing Womack v. Louisiana Commission on Governmental Ethics, 250 La. 833, 841, 199 So.2d 891, 894 (La.1967)).

. Board of Commissioners of North Lafourche Conservation, Levee and Drainage District v. Board of Commissioners of Atchafalaya Basin Levee District, 95-1353 (La.1/16/96), 666 So.2d 636, 639.

. Wooley v. State Farm Fire and Cas. Ins. Co., 04-882 (La.1/19/05), 893 So.2d 746, 762.

. World Trade Ctr. Taxing Dist. v. All Taxpayers, Prop. Owners, 05-374 (La.6/29/05), 908 So.2d 623, 632.

. Id.

. Id.

. La. Const, art. II, § 1.

. La. Const, art. II, § 2.

. La. Const. art. III, § 1; La. Const, art. II, § 1; State v. Alfonso, 99-1546 (La.11/23/99), 753 So.2d 156, 160.

. See, e.g., State v. Dick, 06-2223 (La.1/26/07), 951 So.2d 124, 133.

. State v. Miller, 03-0206 (La.10/21/03), 857 So.2d 423, 427.

. Id. at 427 (quoting City of Alexandria v. Alexandria Fire Fighters Assn., 220 La. 754, 57 So.2d 673 (1952)).

. See City of Alexandria, 57 So.2d at 674; State v. Guidry, 142 La. 422, 76 So. 843 (1917).

. State v. Alfonso, 99-1546 (La.11/23/99), 753 So.2d 156, 160.

. City of Alexandria, 57 So.2d at 674.

. 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 (1937).

. 298 U.S. at 311, 56 S.Ct. 855.

. 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441 (1939).

. 306 U.S. at 15, 59 S.Ct. 379.

. Id.

. Id. at 15-16, 59 S.Ct. 379 (internal citations omitted).

. City of Alexandria, 57 So.2d at 674.

. Id. at 674.

.Id.

. id.

. Id. at 675.

. Id. (internal citations removed).

. 176 La. 837, 147 So. 8 (La.1933).

 147 So. at 10.

. City of Alexandria, 57 So.2d at 676-77.

. Id.

. Id. at 675-76.

. La. R.S. 3:3534(G)(3), 3544(E)(3).

. La. R.S. 3:3534(B)(1), 3544(A)(3) (emphasis added).

. 237 La. 768, 788, 112 So.2d 606, 613 (1959).

. State v. All Pro Paint & Body Shop, Inc., 93-1316 (La.7/5/94), 639 So.2d 707, 711.

. Id. at 712.

. Id.; State v. Barthelemy, 545 So.2d 531, 534 (La.1989); Adams v. State, 458 So.2d 1295, 1298 (La.1984); State v. Union Tank Car, 439 So.2d 377, 381 (La.1983).

. All Pro Paint, 639 So.2d at 712.

. Id. at 712-13.

. See, e.g., Louisiana Municipal Association v. State, 04-0227 (La. 1/19/05), 893 So.2d 809, 845-46.

. State v. Powdrill, 95-2307 (La.11/25/96), 684 So.2d 350, 357; see also, City of New Orleans v. Louisiana Assessors’ Retirement and *398 Relief Fund, 05-2548 (La.10/1/07), 986 So.2d 1, 19.